# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL SECURITY COUNSELORS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:12-cv-284 (BAH) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

The Central Intelligence Agency hereby moves to dismiss Counts 1, 5, 6, 15, 19, 21, 22, 25, and 26 (in part) of Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Office of the Director of National Intelligence hereby moves to dismiss Count 23 under Rule 12(b)(5) for insufficient service of process. Defendants have filed with this motion a memorandum in support of the motion and a proposed order.

Dated:  May 1, 2012

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

RONALD C. MACHEN
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division

/s/ Galen N. Thorp
GALEN N. THORP (VA Bar # 75517)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Room 6140
Washington, D.C. 20530
Tel: (202) 514-4781
Fax: (202) 616-8460
E-mail: galen.thorp@usdoj.gov

Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY COUNSELORS, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>CENTRAL INTELLIGENCE AGENCY, )<br><br>and )<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, )<br><br>Defendants. ) | Civil Action No.: 1:12-cv-284 (BAH) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................1

I.  COUNT 1 MUST BE DISMISSED BECAUSE THE CIA PROPERLY
    ISSUED ITS SEPTEMBER 23, 2011 FINAL RULE AS A PROCEDURAL
    RULE NOT SUBJECT TO NOTICE AND COMMENT. ....................................1

    A.  The Mandatory Declassification Review Program ..................................2

    B.  The CIA's Final Rule is Procedural Because It Does Not Alter The Rights
        of the Parties and Because It Makes No Substantive Value Judgments. ................3

II.  PLAINTIFFS' FOIA COUNTS 5, 6, 15, 19, 25, AND 26 MUST BE DISMISSED
     FOR LACK OF JURISDICTION UNDER RULE 12(b)(1). ...............................6

    A.  Plaintiffs' Policy and Practice Claims Must Be Dismissed Because
        Plaintiffs Do Not Have Standing to Seek Prospective Relief. ...............6

        1.  Plaintiffs fail to establish constitutional standing because their
            injuries are conjectural and hypothetical. ....................................6

        2.  Plaintiffs lack prudential standing because they cannot
            demonstrate any hardship from withholding immediate
            consideration, and any minimal hardship is outweighed by
            the institutional burdens their claims create. ...........................10

    B.  Plaintiffs' Policy and Practice Claims Fail Because They Improperly Seek
        Equitable Relief When Other Adequate Remedies Are Available. ......13

    C.  Counts 5, 19, and 26 (in part) Must Be Dismissed Because Plaintiffs
        Have Failed to Exhaust Administrative Remedies. ..............................16

        1.  Counts 19 and 26 (in part) must be dismissed because plaintiffs
            failed to timely pursue an administrative appeal, or prematurely
            filed suit. .....................................................................................16

        2.  Count 5 must be dismissed because plaintiff failed to perfect its
            FOIA request by committing to pay search fees or alternatively
            narrowing its request.....................................................................20

III.   PLAINTIFFS' FOIA COUNTS 5, 6, 15, 21, 22 AND 25 MUST BE DISMISSED
       BECAUSE THEY FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF
       UNDER RULE 12(b)(6). ................................................................................................23

       A.   Count 5 Fails to State a Claim Because the CIA is Not Required to
            Provide Free Search Time Before a FOIA Request is Perfected. ..........................24

       B.   Count 6 Fails to State a Claim Because the FOIA Permits the Direct
            Costs of Automated Computer Searches to be Recovered Through Fees. ............26

       C.   Count 15 Fails to State a Claim Because the FOIA Does Not Require the
            CIA to Modify its Classified Information Technology System to Make its
            Records Reasonably Reproducible in the Unclassified Electronic Formats
            Sought by Some Requesters. ...............................................................................29

       D.   Count 21 Fails to State a Claim Because the CIA Reasonably Construed
            Plaintiff's Ambiguous Request for Previously Released Documents...................32

       E.   Count 22 Fails to State a Claim Because Plaintiff Has No Right to the
            Production of Redundant Records, Especially Where Any Ambiguity in
            the Production Was the Result of Plaintiff's Own Actions. .................................35

       F.   Count 25 Fails to State a Claim Because the CIA's Statutory Obligation
            to Protect Intelligence Sources and Methods Remains, and Qualifies
            Under Exemption 3. .............................................................................................37

IV.    COUNT 23 AGAINST THE OFFICE OF THE DIRECTOR OF NATIONAL
       INTELLIGENCE MUST BE DISMISSED FOR INSUFFICIENT SERVICE OF
       PROCESS UNDER RULE 12(b)(5)................................................................................39

CONCLUSION.......................................................................................................................42

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Gardner*,
   387 U.S. 136, 149 (1967) ................................................................................................10

*ACLU v. Dep't of Justice*,
   808 F. Supp. 2d 280 (D.D.C. 2011) .................................................................................38

*ACLU v. U.S. Dep't of Justice*,
   628 F.3d 612 (D.C. Cir. 2011) .........................................................................................38

*Adamowicz v. IRS*,
   552 F. Supp. 2d 355 (S.D.N.Y. 2008) ..............................................................................33

*Alcoa Power Generating Inc. v. FERC*,
   643 F.3d 963 (D.C. Cir. 2011) .........................................................................................12

*Am. Hosp. Ass'n v. Bowen*,
   834 F.2d 1037 (D.C. Cir. 1987) ......................................................................................4, 5

*American Historical Association v. NARA*,
   310 F. Supp. 2d 216 (D.D.C. 2004) ...................................................................................9

*Amnesty Int'l USA v. CIA*,
   728 F. Supp. 2d 479 (S.D.N.Y. 2010) ..............................................................................39

*Anderson v. Holder*,
   691 F. Supp. 2d 57 (D.D.C. 2010) ...................................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................................23, 24, 27

*Berman v. CIA*,
   501 F.3d 1136 (9th Cir. 2007) .........................................................................................38

*Cambridge Holdings Grp. v. Fed. Ins. Co.*,
   489 F.3d 1356 (D.C. Cir. 2007) .......................................................................................40

*CareToLive v. FDA*,
   631 F.3d 336 (6th Cir. 2011) ...........................................................................................37

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ...........................................................................................................14

*Chang v. United States,*
   738 F. Supp. 2d 83 (D.D.C. 2010) ................................................................7

*Chaplin v. Stewart,*
   796 F. Supp. 2d 209 (D.D.C. 2011) ...........................................................26

*Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't*
   *of Homeland Security,*
   527 F. Supp. 2d 101 (D.D.C. 2007) ................................................8, 9, 10

*City of Houston v. Dep't of Hous. & Urban Dev.,*
   24 F.3d 1421 (D.C. Cir. 1994) ...............................................................11, 12

*\*Cohen v. United States,*
   650 F.3d 717 (D.C. Cir. 2011) ...................................................................14

*Coven v. U.S. Office of Pers. Mgmt.,*
   No. 07-1831, 2009 WL 3174423 (D. Ariz. Sept. 29, 2009) .....................28

*Crooker v. CIA,*
   No. 86-3055, 1988 WL 50724 (D.D.C. May 10, 1988) .............................27

*Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice,*
   331 F.3d 918 (D.C. Cir. 2003) ...................................................................32

*\*Dale v. IRS,*
   238 F. Supp. 2d 99 (D.D.C. 2002) .......................................................20, 22

*Debrew v. Atwood,*
   __ F. Supp. 2d __, 2012 WL 898786 (D.D.C. Mar. 19, 2012) .................20

*Del Monte Fresh Produce N.A., Inc., v. United States,*
   706 F. Supp. 2d 116 (D.D.C. 2010) ...........................................................14

*Dusenbery v. United States,*
   534 U.S. 161 (2002) ....................................................................................40

*EEOC v. St. Francis Xavier Parochial Sch.,*
   117 F.3d 621 (D.C. Cir. 1997) ...................................................................34

*Flaherty v. President of the United States,*
   796 F. Supp. 2d 201 (D.D.C. 2011) ......................................................16, 17

*Flowers v. IRS,*
   307 F. Supp. 2d 60 (D.D.C. 2004) ...........................................20, 21, 22, 23

*Friends of Keeseville, Inc. v. FERC*,
   859 F.2d 230 (D.C. Cir. 1988) ....................................................................................11, 12

*Gerstein v. CIA*,
   No. 06-04643, 2008 WL 4415080 (N.D. Cal. Sept. 26, 2008) ...............................................39

*Godwin v. Sec'y of Hous. & Urban Dev.*,
   356 F.3d 310 (D.C. Cir. 2004) .................................................................................................5

*Goland v. CIA*,
   607 F.2d 339 (D.C. Cir. 1978) ...............................................................................................38

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) .................................................................................................7

*Hall v. CIA*,
   No. 04-0814, 2006 WL 197462 (D.D.C. Jan. 25, 2006)........................................................25

*Hornes v. Exec. Office for U.S. Att'ys*,
   No.04-2190, 2006 WL 2792680 (D.D.C. 2006) ..............................................................18, 19

*Int'l Counsel Bureau v. CIA*,
   774 F. Supp. 2d 262 (D.D.C. 2011) .......................................................................................38

*Island Film, S.A. v. Dep't of Treasury*,
   768 F. Supp. 2d 286 (D.D.C. 2011) .......................................................................................23

*JEM Broad. Co. v. FCC*,
   22 F.3d 320 (D.C. Cir. 1994) ...................................................................................................4

*Jackson v. U.S. Dep't of Labor*,
   No. 06-2157, 2008 WL 539925 (E.D. Cal. Feb. 25, 2008)....................................................31

*James V. Hurson Assocs., Inc. v. Glickman*,
   229 F.3d 277 (D.C. Cir. 2000) .........................................................................................4, 5, 6

*Jones v. U.S. Dep't of Justice*,
   653 F. Supp. 2d 46 (D.D.C. 2011) .........................................................................................23

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*,
   88 F.3d 1191 (D.C. Cir. 1996) ..........................................................................................13, 16

*\*Koerner v. United States*,
   246 F.R.D. 45 (D.D.C. 2007).............................................................................................40, 41

*Landmark Legal Found. v. EPA,
    272 F. Supp. 2d 59 (D.D.C. 2003) ............................................................30, 31, 32

Laroche v. SEC,
    No. 05-4760, 2006 WL 2868972 (N.D. Cal. Oct. 6, 2006) ....................................31

*Larson v. Dep't of State,
    565 F.3d 857 (D.C. Cir. 2009) ...............................................................................38

Light v. Wolf,
    816 F.2d 746 (D.C. Cir. 1987) ...............................................................................40

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ......................................................................................7, 8, 14

Marks v. CIA,
    426 F. Supp. 708 (D.D.C. 1976) ...........................................................................38

McAllister v. Potter,
    __ F. Supp. 2d __, 2012 WL 540080 (D.D.C. Feb. 21, 2012)................................40

McGehee v. U.S. Dep't of Justice,
    800 F. Supp. 2d 220 (D.D.C. 2011) ......................................................................38

Media Access Project v. FCC,
    883 F.2d 1063 (D.C. Cir. 1989) .............................................................................12

Mogenhan v. Dep't of Homeland Security,
    No. 06-2045, 2007 WL 2007502 (D.D.C. July 10, 2007) ......................................33

Moore v. CIA,
    666 F.3d 1330 (D.C. Cir. 2011) .............................................................................38

Morley v. CIA,
    508 F.3d 1108 (D.C. Cir. 2007) .............................................................................38

Murphy Bros. Inc. v. Michetti Pipe Stringing Inc.,
    526 U.S. 344 (1999)...............................................................................................40

Muttitt v. U.S. Cent. Command,
    813 F. Supp. 2d 221 (D.D.C. 2011) ......................................................................15

NLRB v. Sears, Roebuck & Co.,
    421 U.S. 132 (1975)...............................................................................................31

*Nat'l Treasury Emp. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) ....................................................................................10, 11

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*,
  __ F. Supp. 2d __, 2012 WL 769478 (D.D.C. Mar. 12, 2012) ...............................14

*Nw. Coal. for Alts. to Pesticides v. EPA*,
  254 F. Supp. 2d 125 (D.D.C. 2003) .......................................................................11

*\*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ...........................................................16, 18, 19, 20

*Payne Enterprises, Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ............................................................................13, 14

*Peters v. Dist. of Columbia*,
  __ F. Supp. 2d __, 2012 WL 1255139 (D.D.C. Apr. 16, 2012)...........................33

*Prison Legal News v. Lappin*,
  780 F. Supp. 2d 29 (D.D.C. 2011) ........................................................................35

*Pub. Emps. For Envtl. Responsibility, v. U.S. Dep't of Interior*,
  No. 06-182, 2006 WL 3422484 (D.D.C. Nov. 28, 2006) .....................................15

*\*Public Citizen v. Dep't of State*,
  276 F.3d 634 (D.C. Cir. 2002) ........................................................................4, 5, 6

*\*Quick v. Department of Commerce*,
  775 F. Supp. 2d 174 (D.D.C. 2011) ......................................................................8, 9

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
  415 U.S. 1 (1974) ....................................................................................................13

*\*Research Air, Inc. v. Kempthorne*,
  589 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................26

*Reynolds v. Att'y Gen.*,
  391 F. App'x 45 (2d Cir. 2010) ..............................................................................24

*Richards v. Delta Air Lines, Inc.*,
  453 F.3d 525 (D.C. Cir. 2006) ...............................................................................14

*Saldana v. Bureau of Prisons*,
  715 F. Supp. 2d 10 (D.D.C. 2010) .........................................................................23

*Sanders v. U.S. Dep't of Justice*,
    No. 10-5273, 2011 WL 1769099 (D.C. Cir. 2011)................................................................13

*Scaff-Martinez v. DEA*,
    770 F. Supp. 2d 17 (D.D.C. 2011) ....................................................................................35

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
    131 S. Ct. 1885 (2011) ........................................................................................................19

*Schoenman v. FBI*,
    764 F. Supp. 2d 40 (D.D.C. 2011) ....................................................................................31

*Schoenman v. FBI*,
    __ F. Supp. 2d. __, 2012 WL 171576 (D.D.C. Jan. 23, 2012) ...............................38

*Schoenman v. FBI*,
    No. 04-2202, 2006 WL 1126812 (D.D.C. Mar. 31, 2006) ....................................25

*Seifert v. Winter*,
    555 F. Supp. 2d 3 (D.D.C. 2008) ......................................................................................34

*Shermco Indus., Inc. v. Sec'y of  U.S. Air Force*,
    452 F. Supp. 306 (N.D. Tex. 1978 ....................................................................................19

*Shore v. Henderson*,
    168 F. Supp. 2d 428 (D.D.C. 2001) ..................................................................................40

*Sierra Club v. U.S. Dep't of Interior*,
    384 F. Supp. 2d 1 (D.D.C. 2004) ......................................................................................15

*Skrzypek v. U.S. Dep't of Treasury*,
    No. 06-1129, 2007 WL 2506440 (D.D.C. Aug. 31, 2007) ....................................25

*Stewart v. U.S. Dep't of Interior*,
    554 F.3d 1236 (10th Cir. 2009) ........................................................................................37

*Strout v. U.S. Parole Comm'n*,
    842 F. Supp. 948 (E.D. Mich. 1994)..................................................................................28

*Students Against Genocide v. Dep't of State*,
    257 F.3d 828 (D.C. Cir. 2001) ..........................................................................................13

*Subh v. CIA*,
    760 F. Supp. 2d 66 (D.D.C. 2011) ....................................................................................38

*TPS, Inc. v. U.S. Dep't of Defense*,
    330  F.3d 1191 (9th Cir. 2003) ........................................................................31

*Taitz v. Obama*,
    707 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................17

*Talbot v. CIA*,
    578 F. Supp. 2d 24 (D.D.C. 2008) .................................................................39

*U.S. Telecom Ass'n v. FCC*,
    400 F.3d 29 (D.C. Cir. 2005) ...........................................................................3

*In re United Mine Workers of Am. Emp. Benefit Plans Litig.*,
    854 F. Supp. 914 (D.D.C. 1994) ....................................................................23

*\*Webb v. Dep't of Health & Human Servs.*,
    696 F.2d 101 (D.C. Cir. 1982) ........................................................................11

*Weisberg v. U.S. Dep't of Justice*,
    848 F.2d 1265 (D.C. Cir. 1988) ...............................................................35, 37

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) ..................................................................16, 17

*Wilson v. U.S. Dep't of Transportation*,
    730 F. Supp. 2d 140 (D.D.C. 2010) ...............................................................33

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ........................................................................38

*\*Worth v. Jackson*,
    451 F.3d 854 (D.C. Cir. 2006) ..........................................................................7

*Yeager v. DEA*,
    678 F.2d 315 (D.C. Cir. 1982) ........................................................................31

## STATUTES & RULES

Administrative Procedure Act, 5 U.S.C. § 701 et. seq...................................................1

Freedom of Information Act, 5 U.S.C. § 552 .............................................................1

FOIA Amendments of 1974, Pub. L. No. 93-502 § 1(C),
    88 Stat. 1561, 1563 (Nov. 21, 1974)...............................................................19

Electronic Freedom of Information Act Amendments of 1996,
    Pub. L. No. 104-231, § 8(c), 110 Stat. 3049, 3052 (Oct. 2, 1996)............................................19

Intelligence Reform and Terrorism Prevention Act of 2004,
    Pub. L. No. 108-458, 118 Stat. 3638 ...................................................................38

5 U.S.C. § 552(a)(4)(A) ..........................................................................................22, 27

5 U.S.C. § 552(a)(4)(B) ....................................................................................13, 16, 30

5 U.S.C. § 552(a)(4)(C) ..................................................................................................41

5 U.S.C. § 552(b)(3)(A) ...................................................................................................3

50 U.S.C. § 403(d)(3) ...................................................................................................37

50 U.S.C. § 403-1(i)(1) .................................................................................................38

50 U.S.C. § 403-3(c)(5) ................................................................................................37

50 U.S.C. § 403-3(c)(6) ................................................................................................37

50 U.S.C. § 403-3(c)(7) ................................................................................................37

50 U.S.C. § 403g ..........................................................................................................39

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 6

Fed. R. Civ. P. 12(b)(5)......................................................................................1, 39, 40

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 23, 33

Fed. R. Civ. P. 12(d) ...................................................................................................33

LCvR 5.4(b)(6) ............................................................................................................41

## REGULATIONS & GUIDANCE

Exec. Order 12333, 46 Fed. Reg. 59941 (Dec. 4, 1981) ..............................................38

Exec. Order 13470, 73 Fed. Reg. 45,323 (July 30, 2008) ............................................38

Exec. Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ............................................2, 4

FOIA Update, Vol. XI, No. 3 (1990) ...........................................................................30

1 C.F.R. § 304.9 ................................................................................................25, 28

4 C.F.R. § 81.7(b)(4) ................................................................................................28

4 C.F.R. § 201.8(c) ................................................................................................28

4 C.F.R. § 201.10(a) ................................................................................................25

5 C.F.R. § 294.109(c) ................................................................................................28

5 C.F.R. § 1303.40(h)(3) ................................................................................................28

5 C.F.R. § 1802.7(e) ................................................................................................25

5 C.F.R. § 2604.504(a) ................................................................................................25

10 C.F.R. § 1004.4(e) ................................................................................................25

10 C.F.R. § 1303.110(a) ................................................................................................25

16 C.F.R. §4.11(a)(1)(i)(D) ................................................................................................25

18 C.F.R. § 401.109(a) ................................................................................................25

19 C.F.R. § 201.20(e) ................................................................................................25

26 C.F.R. § 601.702(c) ................................................................................................22, 25

28 C.F.R. § 16.11(e) ................................................................................................25

28 C.F.R. § 701.18(e) ................................................................................................25

29 C.F.R. § 102.117(d)(2)(i)(D) ................................................................................................28

29 C.F.R. § 1610.16(a) ................................................................................................25

32 C.F.R. § 1702.3(a)(2) ................................................................................................41

32 C.F.R. § 1900.02(e)(4) ................................................................................................27

32 C.F.R. § 1900.12 ................................................................................................21, 24

32 C.F.R. § 1900.13 ................................................................................................21, 22, 24, 27

32 C.F.R. § 1900.21(b) ................................................................................................32, 33, 34

32 C.F.R. § 1900.42(b) ................................................................................................17

32 C.F.R. § 1908.13 ......................................................................................................3

32 C.F.R. § 1908.14 ......................................................................................................3

32 C.F.R. § 2001.33 ......................................................................................................2

37 C.F.R. § 203.6 ....................................................................................................25, 28

40 C.F.R. § 1601.33(a) ...............................................................................................25

49 C.F.R. § 7.42(c) ......................................................................................................25

68 Fed. Reg. 55168 (Sept. 22, 2003) ...........................................................................2

72 Fed. Reg. 63104 (Nov. 8, 2007) ..............................................................................4

75 Fed. Reg. 37254 (June 28, 2010) ..........................................................................2, 4

76 Fed. Reg. 59032 (Sept. 23, 2011) ......................................................................2, 3, 5

76 Fed. Reg. 10262 (Feb. 24, 2011) .............................................................................4

## COURT FILINGS

*Leopold v. CIA*, No. 12-245 (D.D.C.)
    Compl. (Feb. 14, 2012), ECF No. 1 .......................................................................12

*Muttitt v. U.S. Cent. Command*, No. 10-202 (D.D.C.)
    Compl. (Feb. 5, 2010), ECF No. 1 .........................................................................12

*Nat'l Security Counselors v. CIA*, No. 11-442 (D.D.C.)
    Compl. (Feb. 28, 2011), ECF No. 1 .......................................................................12

*Nat'l Security Counselors v. CIA*, No. 11-443 (D.D.C.)
    Compl. (Feb. 28, 2011), ECF No. 1 .......................................................................12
    Decl. of Susan Viscuso (Dec. 13, 2011), ECF No. 19-1 ...................................29, 30
    Suppl. Decl. of Susan Viscuso (Jan. 13, 2012), ECF No. 21-1 .........................29, 30

*Nat'l Security Counselors v. CIA*, No. 11-444 (D.D.C.)
    Am. Compl. (Mar. 21, 2011), ECF No. 6 ................................................12, 35, 36
    Def.'s Mot. Summ. J. (Dec. 20, 2011), ECF No. 20 ...............................................36
    Pl.'s Opp'n Def.'s Mot. Summ. J. (Feb. 8, 2012), ECF No. 26 ................................36
    Decl. of Scott Koch (Feb. 27, 2012), ECF No. 27-1 ..........................................29, 30

*Nat'l Security Counselors v. CIA*, No. 11-445 (D.D.C.)
   Am. Compl. (Mar. 21, 2011), ECF No. 7 .................................................................12

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, No. 10-2120 (D.D.C.)
   Am. Compl. (Jan. 21, 2011), ECF No. 6 .................................................................12

*Parker v. Dep't of Justice*, No. 10-2068 (D.D.C.)
   Am. Compl. (Dec. 3, 2010), ECF No. 1 .................................................................12

## INTRODUCTION

National Security Counselors and three other plaintiffs collectively assert twenty-four claims against the Central Intelligence Agency ("CIA") and the Office of the Director of National Intelligence ("ODNI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. They also assert two claims challenging the CIA's issuance of a final rule regarding its mandatory declassification review process, alleging violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq., and other statutes. The CIA now moves to dismiss nine of those claims under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The ODNI seeks dismissal of one count for insufficient service of process under Rule 12(b)(5).

## ARGUMENT

### I. COUNT 1 MUST BE DISMISSED BECAUSE THE CIA PROPERLY ISSUED ITS SEPTEMBER 23, 2011 FINAL RULE AS A PROCEDURAL RULE NOT SUBJECT TO NOTICE AND COMMENT.

Pursuant to executive order and guidance from the National Archives and Records Administration ("NARA"), the CIA issued a final rule on September 23, 2011 updating its regulation implementing the Mandatory Declassification Review Program. Plaintiffs complain that the new regulation sets out a specific fee schedule rather than, as the previous regulation had done, relying on the FOIA fee schedule. Plaintiffs challenge the new regulation procedurally under the APA, claiming that it should have been subject to notice and comment requirements prior to becoming final, and substantively under the APA and two other statutes, claiming that the fees assessed are in excess of statutory authority. While the substantive challenge will be addressed in a later motion based on the administrative record, the procedural challenge should be dismissed. The final rule issued by the CIA does not violate the APA because it is a "rule of agency procedure and interpretation" not subject to the notice and comment requirements.

## A.     The Mandatory Declassification Review Program

The Mandatory Declassification Review ("MDR") Program is an administrative process established by executive order permitting individuals to seek declassification of documents by submitting requests that describe the documents with "sufficient specificity."  *See* Exec. Order 13526 § 3.5(a), 75 Fed. Reg. 707, 717 (Dec. 29, 2009).  An agency decision that the information should remain classified is appealable to an interagency classification appeals panel.  *See id.* § 5.3(b)(3).  The panel's decisions are not subject to review in the federal courts.  *See id.* § 5.3(e).

The executive order delegates implementation of this and other aspects of the Classified National Security Information Program to the Information Security Oversight Office within NARA.  *See id.* § 5.1(a),(b).  It also directs each agency to "designate a senior agency official to direct and administer" the program, giving that official responsibility for "promulgating implementing regulations, which shall be published in the Federal Register to the extent that they affect members of the public."  *See id.* § 5.4(d)(2).

After the President issued the most recent executive order on classified national security information, NARA issued a final rule to provide "interpretive guidance" to agencies regarding implementation of the order, amending its previous directive issued in 2003.  *See* 75 Fed. Reg. 37254 (June 28, 2010); *cf.* 68 Fed. Reg. 55168 (Sept. 22, 2003).  NARA's directive regarding the MDR Program is codified at 32 C.F.R. § 2001.33.  *See* 75 Fed. Reg. 37254, 37267-68.  In that regulation, NARA specifies that agencies are permitted to charge fees:  "*Fees.* In responding to mandatory declassification review requests for classified records, agency heads may charge fees in accordance with 31 U.S.C. 9701 or relevant fee provisions in other applicable statutes."  32 C.F.R. § 2001.33(e).

In compliance with the new executive order and NARA's guidance, the CIA issued a new final rule regarding the MDR Program.  *See* 76 Fed. Reg. 59032 (Sept. 23, 2011).  The rule was

issued without a prior notice of proposed rulemaking under the APA's exception for "rules of agency procedure and interpretation."  *See id.*  It revised fourteen separate provisions of the CIA's MDR Program regulation "to more clearly reflect the current CIA organizational structure and policies and practices, and to eliminate ambiguous, redundant and obsolete regulatory provisions."  *Id.*  Among those provisions is one replacing the CIA's prior fee regulation, 32 C.F.R. § 1908.13, which borrowed the FOIA fee structure, with a new provision, 32 C.F.R. § 1908.14, that creates a fee structure specific to this program.  *See* 76 Fed. Reg. 59032, 59033-34.

### B.     The CIA's Final Rule is Procedural Because It Does Not Alter The Rights of the Parties and Because It Makes No Substantive Value Judgments.

Plaintiffs argue that the CIA failed to follow proper procedure by issuing a final rule on September 23, 2011 without first publishing a proposed rule for public comment.  *See* Am. Compl. ¶¶ 20-39.  This claim must be dismissed for failure to state a claim because the final rule at issue here is not a "legislative rule" subject to notice and comment.  The APA's notice and comment requirements do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 552(b)(3)(A); *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 34 (D.C. Cir. 2005).  By contrast, the category of rules for which an agency is required to publish notice of a proposed rule in the Federal Register and to solicit and consider public comments is generally known as "legislative rules."  *Id.*

The CIA issued this revision of its MDR Program regulations "to more clearly reflect the current CIA organizational structure and policies and practices, and to eliminate ambiguous, redundant and obsolete regulatory provisions."  76 Fed. Reg. 59032, 59033 (Sept. 23, 2011). The Agency issued a final rule without prior notice of proposed rulemaking because it determined the regulatory revisions to be a "rule[] of agency procedure and interpretation" within the scope of 5 U.S.C. § 552(b)(3)(A).  *Id.*  NARA relied on this same provision in 2010 to

publish its implementing directive for Executive Order 13526.  *See* 75 Fed. Reg. 37254 (June 28, 2010); *see also* Federal Maritime Comm'n, 76 Fed. Reg. 10262 (Feb. 24, 2011) (issuing final rule on same subject without notice and comment); Dep't of Treasury, 72 Fed. Reg. 63104 (Nov. 8, 2007) (same).  The Agency's determination should be upheld because the regulation is a rule of agency "procedure or practice."

"The critical feature of a rule that satisfies the so-called procedural exception is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000) (quoting *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994)).  Under the regulation challenged here, the purpose of the executive order and whatever "rights or interests" it confers on the parties are unaffected.  Plaintiffs' ability to request the declassification of documents is unchanged.  The executive order confers no rights on them to pay, for example, only a certain rate for duplication of the documents they requested.  Instead, that rate is a quintessentially procedural matter.

The D.C. Circuit has explained that whether a given regulation is a "rule[] of agency organization, procedure, or practice" turns on "whether the agency action encodes a substantive value judgement." *Public Citizen v. Dep't of State*, 276 F.3d 634, 640 (D.C. Cir. 2002) (quoting *Am. Hospital Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987)).  This standard constitutes a rejection of the inquiry formerly employed to identify a procedural rule—"whether a given procedure has a substantial impact on parties"—because "even unambiguously procedural measures affect parties to some degree." *Id.*

In *Public Citizen*, the D.C. Circuit considered the State Department's policy under the FOIA of generally declining to search for documents produced after the date of the requester's

4

letter.  The plaintiff argued that the policy was not procedural and should be subject to notice and comment because "it substantially affects rights by needlessly multiplying the number of FOIA requests that must be submitted to obtain access to records."  276 F.3d at 640 (quotation marks omitted).  The Court rejected plaintiffs' argument.  It held that "[b]ecause the Department's cut-off policy applies to all FOIA requests, making no distinction between requests on the basis of subject matter, it clearly encodes no 'substantive value judgment.'"  *Id.* (quoting *Am. Hospital Ass'n*, 834 F.2d at 1047).  Further, the Court noted that the harshness of the effect on plaintiffs was irrelevant, observing that "far harsher" rules had been upheld, including the refusal to issue broadcast licenses to those who missed an application deadline.  *Id.*; *see also James V. Hurston Assocs., Inc. v. Glickman*, 229 F.3d 277. 281 (D.C. Cir. 2000) ("impos[ing] a substantial burden . . . would not convert the rule into a substantive one that triggers the APA's notice-and-comment requirement" because "the impact of a rule has no bearing on whether it is legislative or interpretative").

Similarly here, the CIA's revision of its MDR Program regulation does not make value judgments or distinguish between relevant members of the public.  Instead, it revises various aspects of agency process, updating the statement of authority, §§ 1-3, modifying certain definitions, § 4, stating that public comments are welcome, § 5, implementing the executive order's exclusion of requests from noncitizens and foreign governments, § 6, clarifying the request requirements, § 7, revising the fees charged for the costs of responding to requests, § 8, requiring responses to inter-agency referrals, § 10, modifying the appeals process, §§ 12, 14, 15, and removing certain provisions, §§ 9, 11, 13.  *See* 76 Fed. Reg. at 59032-59034.  Most of these provisions are indisputably procedural in nature.  Indeed, the provision plaintiffs specifically challenge, § 8's revision of the MDR fee schedule, "makes no distinction between requests on

the basis of subject matter." *Public Citizen*, 276 F.3d at 640.  Instead, the fee schedule distinguishes only on the basis of the costs incurred by the agency for reproduction, search, and review to satisfy the request.  *See* 76 Fed. Reg. at 59033-59034.  This does not "alter the substantive criteria by which [the CIA] would approve or deny" MDR requests.  *Glickman*, 229 F.3d at 281.  Accordingly, the revision of the CIA's MDR regulation is not a legislative rule requiring notice and comment.  Count 1 should be dismissed for failure to state a claim and for lack of subject matter jurisdiction.

## II.   PLAINTIFFS' FOIA COUNTS 5, 6, 15, 19, 25, AND 26 MUST BE DISMISSED FOR LACK OF JURISDICTION UNDER RULE 12(b)(1).

While disposition of many of plaintiffs' FOIA claims must await the CIA's processing of the requests and explanation of the necessary withholdings, several of the claims may be dismissed out of hand for failure to comply with the FOIA's procedural requirements or because it is clear on the face of the Amended Complaint that no violation occurred.

### A.   Plaintiffs' Policy and Practice Claims Must Be Dismissed Because Plaintiffs Do Not Have Standing to Seek Prospective Relief.

Plaintiffs have brought four counts (Counts 5, 6, 15, 25; Prayer ¶¶ 8-19) challenging alleged CIA policies or practices that they claim violate the FOIA.  In each of these counts, plaintiffs seek prospective relief in the form of a declaration and injunction compelling the CIA to change its alleged policy.  To support their entitlement to relief on these claims, plaintiffs allege that they will be harmed in the future because "they regularly file FOIA requests with CIA . . . and will continue to do so in the future."  Am. Compl. ¶ 218; *see also id.* ¶¶ 76, 83, 137 (virtually identical allegations).  This generic allegation is insufficient to support standing.

### 1.   *Plaintiffs fail to establish constitutional standing because their injuries are conjectural and hypothetical.*

The "irreducible constitutional minimum" for standing to bring suit requires a plaintiff to

show that he "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Worth v. Jackson*, 451 F.3d 854, 857-58 (D.C. Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  When a plaintiff seeks prospective relief, the inquiry becomes "whether that prospective injury qualifies as an injury in fact."  *Worth*, 451 F.3d at 858; *see also Chang v. United States*, 738 F. Supp. 2d 83, 88 (D.D.C. 2010) (holding that those "seeking injunctive relief must establish a fourth element," a "real and immediate threat of repeated injury demonstrated by more than past exposure to illegal conduct").  General averments of future action are merely speculative intentions and do not confer standing.  *See Worth*, 451 F.3d at 858 (rejecting as speculative plaintiff's averment that he "intends to apply for new positions and promotions at HUD on a regular basis in the future"); *see also Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").  When challenging an alleged policy or practice, "more than a nebulous assertion of the existence of a 'policy' is required to establish standing.  The plaintiffs must not only demonstrate its existence but also that they are likely to be subjected to the policy again."  *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987).

Each of the four policy and practice claims here applies the same formula.  First, National Security Counselors (for Counts 5 and 6) or all four plaintiffs (for Counts 15 and 25) allege that the CIA has adopted a policy or practice that violates the FOIA.  Am. Compl. ¶¶ 75, 82, 136, 217.  Then plaintiffs claim that they "stand to continue to be harmed by this ongoing policy in the future" because they are a "frequent FOIA requester to CIA," *id.* ¶ 76, or "regularly file FOIA requests with CIA and will continue to do so in the future."  *Id.* ¶¶ 83, 137, 218.  None of

the plaintiffs allege <u>any</u> specific plans to file FOIA requests in the future that would implicate the alleged policies and practices they seek to challenge. Instead, their claims of future injury rest entirely on the bare allegation that they are frequent FOIA requesters. This cannot meet the "actual or imminent" injury required to seek prospective relief.

This Court recently rejected a virtually identical attempt to establish standing to seek prospective relief. In *Quick v. Department of Commerce*, 775 F. Supp. 2d 174 (D.D.C. 2011), the plaintiff sought standing for a pattern or practice FOIA claim based on the allegation that he "plans to file additional FOIA requests to the NIST in the future." *Id.* at 187. Judge Kollar-Kotelly rejected this "passing allegation" because "the Supreme Court has foreclosed that route: '[s]uch "some day" intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the [requisite] "actual or imminent" injury.'" *Quick*, 775 F. Supp. 2d at 187 (quoting *Lujan*, 504 U.S. at 564).

Similarly, the Court dismissed certain claims in *Citizens for Responsibility & Ethics in Washington* ("*CREW*") *v. U.S. Department of Homeland Security*, 527 F. Supp. 2d 101 (D.D.C. 2007), on standing grounds. CREW had challenged the denial of its FOIA request for certain White House visitor logs and, at the same time, raised an APA challenge to DHS's policy governing the retention of those records. *Id.* at 102. Judge Lamberth concluded that CREW lacked standing to seek prospective injunctive or declaratory relief with respect to its policy challenge because it had alleged only a past harm—some records responsive to its FOIA request had been deleted pursuant to the challenged policy. *Id.* at 105-06. The Court specifically rejected CREW's claim of a "continuing injury" based on its intention to "continue to use the FOIA to gain access to agency records" in the future. *Id.* at 106. Although the Court found CREW's alleged injury "plausible," it held the injury "too speculative and remote" to establish

standing for prospective relief because "nothing in the record before the Court suggests how frequently these requests are made . . . and whether (or when) CREW expects to file future FOIA requests." *Id.* In short, the possibility that CREW might someday file another FOIA request was "not enough to establish an imminent, non-speculative injury-in-fact" sufficient to create standing to seek prospective relief. *Id.* at 107.

Finally, the plaintiffs in *American Historical Association v. NARA*, 310 F. Supp. 2d 216 (D.D.C. 2004), lacked standing to challenge the legality of an executive order pursuant to which access to presidential records of former President Reagan had been withheld. *Id.* at 218. Arguing that the executive order conflicted with the Presidential Records Act, plaintiffs sought a declaratory judgment to that effect and an injunction barring its future application. *Id.* at 224 n.5. By the time the Court considered the plaintiffs' claim, however, most of the records they sought had already been released; the balance had been withheld pursuant to an undisputed assertion of privilege; and the plaintiffs had no outstanding requests for such records. *Id.* at 223-24, 228. Thus, while the Court accepted that the delayed release constituted a past harm, it rejected plaintiffs' assertion of future harm based on their "regular[]" and "extensive use of the records of former presidents." *Id.* at 228. The Court concluded that even the "significant likelihood that [p]laintiffs will again seek access to presidential records, and face indeterminate delays in accessing them," does not establish the requisite future injury that is "sufficiently imminent, and not conjectural and hypothetical," and thus dismissed plaintiffs' prospective relief claims for lack of standing. *Id.* at 228-29.

Like the plaintiffs in *Quick*, *CREW*, and *American Historical Association*, plaintiffs' allegations that they "stand to continue to be harmed by this ongoing policy in the future" because they "regularly file FOIA requests with CIA and will continue to do so in the future,"

are too speculative to establish standing to seek prospective relief.  Plaintiffs' status as frequent

FOIA requesters cannot transform speculation and conjecture into cases or controversies.  *See*

*CREW*, 527 F. Supp. 2d at 106 ("That CREW may one day file another FOIA request with the

DHS does not represent a cognizable, palpable injury which presents a case or controversy for

the Court to consider.").  This is especially true where certain plaintiffs have not even alleged

that they have made or will make requests that implicate the alleged policy.  *See, e.g.*, ¶¶ 127,

134 (not alleging that any plaintiff other than Ms. Sack was ever denied a request for production

in an electronic format, let alone that they had specific plans to make such requests in the future);

*id.* ¶¶ 88, 110, 163, 198, 218 (not identifying any instance in which a plaintiff other than

National Security Counselors was denied access to records on the basis of Exemption 3).

Because plaintiffs cannot meet their burden of establishing that they have standing to seek

prospective relief, their policy and practice claims—Counts  5, 6, 15, 25—should be dismissed

for lack of subject matter jurisdiction.

> 2.  *Plaintiffs lack prudential standing because they cannot demonstrate any hardship from withholding immediate consideration, and any minimal hardship is outweighed by the institutional burdens their claims create.*

Even if the Court concludes that plaintiffs have constitutional standing to bring its policy

counts, it should dismiss their policy and practice claims because they lack prudential standing.

"Prudentially, the ripeness doctrine exists to prevent the courts from wasting [their] resources by

prematurely entangling ourselves in abstract disagreements."  *Nat'l Treasury Emp. Union v.*

*United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).  In testing whether the facts of a particular

case meet that standard of ripeness, courts apply "a two-part analysis, evaluating '[1] the fitness

of the issues for judicial decision and [2] the hardship to the parties of withholding court

consideration.'"  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  One of the

factors weighing against fitness for review is "the court's interest in avoiding unnecessary

adjudication and in deciding issues in a concrete setting." *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1430-31 (D.C. Cir. 1994) (internal quotation marks omitted).

Plaintiffs lack standing because they can demonstrate no hardship from deferring review of the alleged policy and practice.  "[I]f the hardship to the parties is slight, only a minimum showing of countervailing judicial or administrative interest is needed . . . to tip the balance against judicial review." *Webb v. Dep't of Health & Human Servs.*, 696 F.2d 101, 106 (D.C. Cir. 1982) (quotation marks omitted); *see also Nat'l Treasury Emp. Union*, 101 F.3d at 1431 ("Whatever is on the other side of the scale need not be very heavy to outweigh [a] light hardship.").  Each of the alleged policies plaintiffs challenge involves the disposition of specific FOIA requests.  *See* Am. Compl. ¶¶ 75, 82, 136, 217.  Thus, any injury from improperly withheld records or delayed processing, if it were to occur, can be remedied by filing a lawsuit regarding the specific request.  *See Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 236-37 (D.C. Cir. 1988) ("In determining whether a controversy is ripe, one relevant factor is the availability of judicial review at a later stage if the feared result does in fact materialize."); *Nw. Coal. for Alts. to Pesticides v. EPA*, 254 F. Supp. 2d 125, 133 (D.D.C. 2003) (observing that in *Webb* "the Circuit noted that judicial review would be available if and when a FOIA requester was denied the full relief sought.").  The FOIA deadlines provide frequent recourse to litigation, and plaintiffs here have proven unabashed at vigorously employing those opportunities.  Further, the "burden" of filing another lawsuit is simply not enough to create cognizable hardship.  *See Webb*, 696 F.2d at 107 (rejecting hardship where the "only hardship Webb will endure as a result of delaying consideration of this issue is the burden of having to file another suit").

Turning to the other side of the balance, institutional interests counsel against judicial review here.  First, there is the persistent judicial interest of economy, "avoiding unnecessary

adjudication." *City of Houston*, 24 F.3d at 1430-31.  Determining whether an agency has a universal policy or practice and contemplating the range of possible legitimate or illegitimate variations on such a practice consumes resources not required by addressing concrete disputes regarding specific FOIA requests.  *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 967 (D.C. Cir. 2011) ("[P]rinciples of judicial restraint and efficiency . . . counsel against spending our scarce resources on what amounts to shadow boxing.").  This is especially true when dealing with a litigant who seeks to turn almost every FOIA dispute into a policy or practice claim.[1] Second, the Court would be required to engage in plaintiffs' speculative claims of future injury. *See Media Access Project v. FCC*, 883 F.2d 1063, 1071 (D.C. Cir. 1989) ("The mere potential for future injury  . . . is insufficient to render an issue ripe to review.").  And third, the CIA has an interest in the adjudication of its actions in the context of specific requests rather than on the basis of abstract generalities.  *See Alcoa Power*, 643 F.3d at 967 ("whether consideration of the issue would benefit from a more concrete setting").  In light of plaintiffs' ephemeral hardship, these basic countervailing considerations are sufficient to make such policy and practice claims unripe.  *See Friends of Keeseville*, 859 F.2d at 236 ("Even when (as here) the governmental interest in withholding adjudication is relatively slight, an issue may nevertheless be unripe if the petitioner's interest in immediate resolution is insignificant.").

---

[1]  *See, e.g.*, Compl., *Leopold v. CIA*, No. 12-245 (D.D.C. Feb. 14, 2012), ECF No. 1 (Counts 1-3); Am. Compl., *Nat'l Security Counselors v. CIA*, No. 11-445 (D.D.C. Mar. 21, 2011), ECF No. 7 (Counts 4, 11, 14-21); Am. Compl., *Nat'l Security Counselors v. CIA*, No. 11-444 (D.D.C. Mar. 21, 2011), ECF No. 6 (Counts 2-7, 11-16); Compl., *Nat'l Security Counselors v. CIA*, No. 11-443 (D.D.C. Feb. 28, 2011), ECF No. 1 (Count 2); Compl., *Nat'l Security Counselors v. CIA*, No. 11-442 (D.D.C. Feb. 28, 2011), ECF No. 1 (Count 6); Am. Compl., *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, No. 10-2120 (D.D.C. Jan. 21, 2011), ECF No. 6 (Counts 27-29); Compl. *Parker v. Dep't of Justice*, No. 10-2068 (D.D.C. Dec. 3, 2010), ECF No. 1 (Count 1); Compl., *Muttitt v. U.S. Cent. Command*, No. 10-202 (D.D.C. Feb. 5, 2010), ECF No. 1 (Counts 25-28).

**B.** **Plaintiffs' Policy and Practice Claims Fail Because They Improperly Seek Equitable Relief When Other Adequate Remedies Are Available.**

The only relief expressly provided by the FOIA addresses an agency's response to a specific FOIA request.  *See* 5 U.S.C. § 552(a)(4)(B) (Courts may "enjoin the agency from withholding agency records and [] order the production of any agency records improperly withheld from the complainant."); *Sanders v. U.S. Dep't of Justice*, No. 10-5273, 2011 WL 1769099, at *1 (D.C. Cir. 2011) (per curiam; unpublished) (affirming denial of "various requests for relief in addition to the disclosure of documents" because "because FOIA requesters are not entitled to relief beyond the disclosure of the records that they seek"); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 841 (D.C. Cir. 2001) ("[I]f the government produces all responsive records, FOIA provides no further production-related relief."); *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996) (concluding that court lacked authority under FOIA to order publication of regulation in Federal Register).

The D.C. Circuit in *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), however, chose to exercise the court's inherent equitable powers by providing declaratory relief from an agency's "persistent refusal to end a practice for which it offers no justification." 837 F.2d at 494.  The Court found support in Supreme Court dicta noting that the explicit FOIA remedy was not necessarily exclusive because "there is little to suggest . . . that Congress sought to limit the inherent powers of an equity court" to enforce a statute.  *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974).  In *Payne*, the Court addressed the claim that "an agency *policy or practice* will impair the party's lawful access to information in the future." 837 F.2d at 491.  In that case it was undisputed that the agency was "following an impermissible practice" and that plaintiff "will suffer continuing injury due to this practice."  *Id.*  For two years, the FOIA processers in the agency refused to comply with the rulings of the internal FOIA

13

appeal authority, the Secretary of the Air Force, and offered no justification for their actions.  *Id.* at 494.  In light of the Secretary's "inability to deal with [the] noncompliance" and the agency's "persistent refusal to end an [unjustified] practice" the Court ordered declaratory relief.  *Id.*

*Payne* does not open the door to any and all "policy or practice" claims.  It is limited in two fundamental ways.  First, *Payne* does not relieve plaintiffs from their burden, as discussed above, of proving standing to bring claims for future injuries.  *See Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, __ F. Supp. 2d __, No. 10-2120, 2012 WL 769478, at *5-6 (D.D.C. Mar. 12, 2012) (holding that Payne does not "assist Plaintiffs in demonstrating that they have suffered or are likely in the future to suffer concrete injury"); *Del Monte Fresh Produce N.A., Inc., v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) (holding that to the extent *Payne* "conflicts with *SUWA* and *Lujan*, the Supreme Court's more recent proclamations of the law overrule it").  And second, "policy and practice" claims under *Payne*, like other exercises of the court's inherent equitable powers, are limited to circumstances where no other adequate remedy is available.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (noting that "[a] court must, of course, exercise caution in invoking its inherent power"); *Cohen v. United States*, 650 F.3d 717, 738 (D.C. Cir. 2011) (observing that it is a "bedrock principle of the American legal system [that] [e]quitable relief is not available when there is an adequate remedy at law"); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 n.6 (D.C. Cir. 2006) ("The general rule is that injunctive relief will not issue when an adequate remedy at law exists.").

Not only do plaintiffs lack *standing* to bring these *Payne*-style policy and practice claims, as discussed above, but also they cannot demonstrate that no other adequate remedy is available. Unlike the unusual situation in *Payne* where a Court could not expect a decision regarding a specific FOIA dispute to alter the agency's behavior, there is every reason to believe that the

CIA will be responsive to the Court's decisions without recourse to equitable remedies.  Nor is there any history of internal noncompliance or actions without justification.  Ordinary FOIA litigation is fully capable of resolving plaintiffs' disputes regarding the CIA's actions in specific cases involving their FOIA requests.

Further, plaintiffs have not availed themselves of the opportunities that the FOIA provides to resolve some of these disputes.  *See Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 31 (D.D.C. 2004) (holding that "[u]nlike Payne Enterprises, Plaintiffs here have very little basis for their challenge" where plaintiffs failed to cooperate with the agency's FOIA office).  As discussed below, National Security Counselors rejected the CIA's efforts to resolve the free search dispute at issue in Count 5.  *See* Am. Compl. ¶¶ 70-72; *see infra* Section II(C)(2).  Even more egregiously, Count 6 depends on National Security Counselors' speculative interpretation of a single phrase in an agency response letter about which plaintiff never further inquired.  *See id.* ¶¶ 79-82.  Moreover, it is well established that a "pattern" cannot be alleged on the basis of one instance.  *See Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011) ("[A]n allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern or practice of violating FOIA."); *Pub. Emps. For Envtl. Responsibility, v. U.S. Dep't of Interior*, No. 06-182, 2006 WL 3422484, at *9 (D.D.C. Nov. 28, 2006) (concluding that the "isolated response to the FOIA request at issue in this case . . . by itself is insufficient to demonstrate a *policy* or *practice*").

Not least, some of the equitable relief plaintiffs seek is extraordinarily invasive.  Disputing the CIA's reasons for processing FOIA requests on a classified computer system, plaintiffs ask the Court for "an injunction compelling CIA to utilize a more reasonable FOIA processing system."  Am. Compl. ¶ 138; prayer ¶ 16.  Such a requirement could entail millions

of dollars of retrofitting, not to mention uncertain effects on national security. Also, plaintiffs seek an injunction specifying what can be said in its "regulations, guidelines, and policy statements." Am. Compl. prayer ¶¶ 10, 13, 16, 19. This may exceed the scope of FOIA injunctive relief. *See, e.g.*, *Kennecott Utah Copper Corp.*, 88 F.3d at 1202-03 (concluding that the FOIA does not "authorize the district court to order publication" of information in the Federal Register). Regardless, these examples demonstrate why the Court should decline to address the question of injunctive relief when ordinary, less invasive means of addressing FOIA disputes are available.

For all of these reasons, equitable relief beyond what is provided in 5 U.S.C. § 552(a)(4)(B) is inappropriate here.

### C. Counts 5, 19, and 26 (in part) Must Be Dismissed Because Plaintiffs Have Failed to Exhaust Administrative Remedies.

Plaintiffs have failed to pursue the administrative remedies available for several of their claims. "[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004). Pursuit of administrative remedies before filing suit is required "so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to supports its decision." *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). If a FOIA plaintiff attempts to obtain judicial review without first properly exhausting administrative remedies, the lawsuit is subject to dismissal. *Wilbur*, 355 F.3d at 676; *Flaherty v. President of the United States*, 796 F. Supp. 2d 201, 207 (D.D.C. 2011).

> 1. *Counts 19 and 26 (in part) must be dismissed because plaintiffs failed to timely pursue an administrative appeal, or prematurely filed suit.*

It is well established that "the exhaustion of administrative remedies requires the timely filing of an administrative appeal from an agency's determination as to whether it can or will

produce records responsive to a FOIA request." *Flaherty*, 796 F. Supp. 2d at 207-08.  This means "that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." *Wilbur*, 355 F.3d at 677.  The CIA requires that an appeal of the agency's initial decision must be received within forty-five days of the date of the release letter.  *See* 32 C.F.R. § 1900.42(b).  The exhaustion requirement also means that a lawsuit must be dismissed if filed before an administrative appeal or before the end of the agency's twenty day period to respond to that appeal.  *See Taitz v. Obama*, 707 F. Supp. 2d 1, 4-5 (D.D.C. 2010); 5 U.S.C. § 552(a)(6)(A)(ii).

The claim in Count 19 concerns FOIA request F-2011-02159, for which the CIA issued a decision letter on October 21, 2011.  *See* Am. Compl. ¶ 163.  National Security Counselors did not respond to the CIA concerning this request until December 29, 2011, well after the forty-five days provided for an appeal.  *See id.* ¶ 164.  Two of the three claims in Count 26 concern FOIA requests F-2011-01891 and F-2012-00318, for which the CIA issued decision letters on March 13 and March 15, 2012.  *See id.* ¶¶ 229, 230.  National Security Counselors does not allege that it appealed these two decisions.  Even if it had immediately appealed the decisions, the agency's time to respond would not have run before plaintiff filed its Amended Complaint a week later, on March 21, 2012.  *See* Am. Compl.  Accordingly, plaintiff has failed to exhaust administrative remedies and all claims regarding these three FOIA requests must be dismissed.

Plaintiff argues, however, that its failures are excused because the CIA's response letters are deficient.  *See* Am. Compl. ¶¶ 166, 231.  It maintains that a denial letter which "does not provide an estimate of the volume of any denied matter" does not meet the statutory requirements and cannot trigger the appeal deadline.  *See id.*  Plaintiff's creative theory is

contradicted by binding precedent.  The D.C. Circuit has ruled that an agency's compliance with

the three requirements of § 552(a)(6)(A)(i) triggers the administrative appeal requirement.  In

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990), the Court squarely held that "[a]

response is sufficient for purposes of requiring an administrative appeal if it includes:  the

agency's determination of whether or not to comply with the request; the reasons for its decision;

and notice of the right of the requester to appeal to the head of the agency if the initial agency

decision is adverse."  *Id.*, 920 F.2d at 65.  That standard remains correct.  *See Hornes v. Exec.*

*Office for U.S. Att'ys*, No.04-2190, 2006 WL 2792680, at *3 (D.D.C. 2006) (unpublished) ("To

trigger the appeal requirement, the 'response is sufficient ... if it includes:  the agency's

determination of whether or not to comply with the request; the reasons for its decision; and

notice of the [requester's] right to appeal.'" (quoting *Oglesby*, 920 F.2d at 65)).

      Here, plaintiff does not allege that the CIA failed to comply with the three requirements

*Oglesby* identifies as triggering the appeal requirement.  Thus, there is no dispute that the CIA

"immediately notif[ied] the person making such request of [the agency's] determination and the

reasons therefor, and of the right of such person to appeal to the head of the agency any adverse

determination."  5 U.S.C. § 552(a)(6)(A)(i).  Instead, plaintiff alleges that a separate provision

must also be fulfilled before an appeal is required:

> In denying a request for records, in whole or in part, an agency
> shall make a reasonable effort to estimate the volume of any
> requested matter the provision of which is denied, and shall
> provide any such estimate to the person making the request, unless
> providing such estimate would harm an interest protected by the
> exemption in subsection (b) pursuant to which the denial is made.

5 U.S.C. § 552(a)(6)(F).  Plaintiff provides no authority in this circuit for the notion that failure

to provide an estimated volume in the decision letter voids the appeal deadline.[2]

   *Oglesby* disposes of plaintiff's theory.  *See* 920 F.2d at 65 (establishing only three requirements for response to be "sufficient for purposes of requiring an administrative appeal"); *Hornes*, 2006 WL 2792680, at *3 (applying Oglesby after 1996 amendments).[3]  Moreover, § 552(a)(6)(F) does not logically fit within the initial response letter prerequisites.  The provision does not require that the estimate be made in writing, let alone require that it appear within or simultaneous to the initial determination referenced in § 552(a)(6)(A)(i).  *See Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885, 1893 (2011) (noting that it is up to each agency's implementing regulation to determine certain details, such as whether the response must be in writing).  Further, this provision explicitly permits the estimate to be withheld where providing it "would harm an interest protected by the [claimed] exemption," but it does not require the agency to state its grounds for believing that such an estimate would harm the protected interests. *See* Office of Information Policy, FOIA Update, Vol. XVII, No. 2 (1996) ("[T]his provision does not apply in the exceptional situation (e.g., a 'neither confirm nor deny' case) in which disclosing

---

[2]  Plaintiff's reference to "the requirements of *Shermco Industries* . . . and its progeny" demonstrates the paucity of its claim.  *See* Am. Compl. ¶ 167; *Shermco Indus., Inc. v. Sec'y of U.S. Air Force*, 452 F. Supp. 306, 317 (N.D. Tex. 1978), *rev'd on other grounds*, 613 F.2d 1314 (5th Cir. 1980) (stating that agency "determination" must "include a list of the documents that are releasable and withheld").  That court was not interpreting § 552(a)(6)(F), a 1996 amendment.  Nor has any court in this circuit adopted this statement from *Shermco Industries*.

[3]  The fact that § 552(a)(6)(F) was adopted after the *Oglesby* decision does not alter the result. *See* Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, § 8(c), 110 Stat. 3049, 3052 (Oct. 2, 1996) (adopting § 552(a)(6)(F)).  At the time *Oglesby* was decided, there was another longstanding statutory requirement for agency decision letters which the D.C. Circuit did not incorporate into its sufficiency-of-the-request analysis.  *See* 5 U.S.C. § 552(a)(6)(C) ("Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.").  If the D.C. Circuit did not incorporate this requirement, which has been unchanged since 1974, *see* FOIA Amendments of 1974, Pub. L. No. 93-502 § 1(C), 88 Stat. 1561, 1563 (Nov. 21, 1974), there is no reason to conclude that the 1996 notification requirement renders *Oglesby* no longer valid.

the volume of records withheld would be harmful.").

It is this exception that makes plaintiff's reading utterly unworkable.  If plaintiff is correct, no plaintiff would ever need to administratively appeal a decision letter that withheld the estimate pursuant to the harm clause.  That plaintiff could simply dispute that "providing such estimate *would* harm" the interest, claim that the decision letter was thus deficient, and proceed to court without an appeal.  Such an absurd result would prematurely burden the courts with unnecessary litigation and defeat the salutary purposes of administrative exhaustion.  *See, e.g.*, *Oglesby*, 920 F.2d at 61 ("so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision").

Plaintiff seeks to force this Court to consider claims that are either premature or untimely due to its knowing failure to exhaust administrative remedies.  These claims should be dismissed.

> 2. *Count 5 must be dismissed because plaintiff failed to perfect its FOIA request by committing to pay search fees or alternatively narrowing its request.*

Count 5 of the complaint must be dismissed because National Security Counselors has failed to exhaust administrative remedies.  By not providing written agreement to pay applicable fees, plaintiff did not submit a proper FOIA request under CIA regulations.  Further, plaintiff has rejected the CIA's efforts to resolve the deficiency.  Accordingly, the claim is "subject to dismissal for the failure . . . to commit to payment of search and duplication fees."  *Dale v. IRS*, 238 F. Supp. 2d 99, 107 (D.D.C. 2002).

A FOIA request must be "made in accordance with [the agency's] published rules stating the time, place, fees (if any) and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  "Exhaustion requires a requester to comply with agency regulations for the submission of a FOIA request."  *Debrew v. Atwood*, __ F. Supp. 2d __, 2012 WL 898786, at *6 (D.D.C. Mar. 19, 2012); *see also Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004) ("[F]ailure to file a

perfected request . . . constitutes failure to exhaust administrative remedies.").  The CIA, like many agencies, has promulgated regulations requiring a requester to commit to pay fees in order to perfect a request.  *See* 32 C.F.R. § 1900.12(b) ("A requester should also provide an agreement to pay all applicable fees or fees not to exceed a certain amount or request a fee waiver."); *id.* § 1900.12(c) ("Communications which do not meet these requirements will be considered an expression of interest and the Agency will work with, and offer suggestions to, the potential requester in order to define a request properly.").  When the fees may be large, a "specific commitment" to pay the fees is further required.  *See* 32 C.F.R. § 1900.13(e) ("In order to protect requesters from large and/or unanticipated charges, the Agency will request specific commitment when it estimates that fees will exceed $100.00.  The Agency will hold in abeyance for forty-five (45) days requests requiring such agreement and will thereafter deem the request closed.").

National Security Counselors filed five FOIA requests in September 2011 that became the subject of Count 5 of the Amended Complaint.  *See* Am. Compl. ¶ 69.  In those requests, it sought a fee waiver, and affirmatively stated that it was unwilling to pay any fees.  *See id.* ¶ 70. The CIA denied the fee waivers for each of the requests, explained what the requester could receive for free under the FOIA, and concluded, pursuant to their regulations:

> Since you state for the record your unwillingness to pay any fees, we will need your commitment to pay all applicable fees before we can proceed with our searches.  We will hold your request in abeyance for 45 days from the date of this letter pending your response.

*Id.*  Instead of committing to pay the fees or agreeing to limit the search to the  amounts available for free under the statute, plaintiff demanded that the CIA "conduct the first two hours of search regardless of our promise to pay" because "we are entitled to two free hours of search time per request even if we never answer you."  *Id.* ¶ 71.  The CIA responded that agreement to pay fees was a prerequisite to a perfected request in the "all other" fee category, and that the CIA would

"take no further action on your request unless we receive your fee commitment as described above."  Am. Compl. ¶ 72; *see* 5 U.S.C. § 552(a)(4)(A)(ii)(III); 32 C.F.R. § 1900.13(i)(3). Plaintiff has since appealed the fee waiver issue.[4]  *See* Am. Compl. ¶ 73.

Plaintiff's failure to exhaust is demonstrated by its similarity to the situation the Court faced in *Dale v. IRS.  See* 238 F. Supp. 2d at 107.  IRS regulations required that a request "state the firm commitment of the requester to pay the fees for search and duplication."  26 C.F.R. § 601.702(c)(3)(viii), *since recodified at* 26 C.F.R. § 601.702(c)(4)(i)(H).  The requester made no commitment to pay fees, and while his counsel belatedly sought a fee waiver, no commitment to pay fees was ever provided.  *See Dale*, 238 F. Supp. 2d at 106-07.  The IRS pointed out the deficiency by letter.  But instead of addressing the deficiencies, the requester filed suit.  *See id.* at 101-02.  The Court concluded that it lacked jurisdiction to consider the claims because "failure . . . to commit to payment of search and duplication fees" was a fatal failure to comply with the administrative requirements of the FOIA as implemented in IRS regulations.  *See id.* at 107.

Plaintiff here is in the same boat.  It could have easily remedied the deficiency by committing to pay the applicable fees or by clarifying that its request was limited to whatever search could be conducted within the two hours provided by 5 U.S.C. § 552(a)(4)(iv)(II).  It did neither.  Instead plaintiff demanded that the search be conducted even though its request failed to meet the CIA's requirements for a perfected request.  Because plaintiff has failed to comply with the CIA's FOIA regulations, it has failed to exhaust administrative remedies and this claim must be dismissed for lack of jurisdiction.  *See Flowers*, 307 F. Supp. 2d at 69 (holding that plaintiff failed to perfect her request because, among other things, it did not "state the plaintiff's firm

---

[4]  The fee waiver appeal is irrelevant for purposes of Count 5 because plaintiff does not challenge that denial, *see* Am. Compl. ¶¶ 75-77, and because failure to perfect a FOIA request is distinct from failure to exhaust an administrative appeal.

agreement to pay for search and duplication fees").[5]  Moreover, even if plaintiff's claim were not subject to dismissal for lack of jurisdiction, the policy it alleges is fully consistent with the FOIA, as demonstrated in the next section.  *See infra* Section II(D)(1).

## III.   PLAINTIFFS' FOIA COUNTS 5, 6, 15, 21, 22 AND 25 MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER RULE 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Anderson v. Holder*, 691 F. Supp. 2d 57, 61 (D.D.C. 2010).  A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  However, where the well-pleaded facts do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint fails to show entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

Even if plaintiffs had standing to bring their policy and practice claims, those claims, along with two other claims, would still be subject to dismissal under Rule 12(b)(6).  The plaintiffs' four policy and practice claims either fail to establish that the CIA has adopted the challenged policy or allege policies and practices that are consistent with the FOIA.  Because

---

[5]  *See also Island Film, S.A. v. Dep't of Treasury*, 768 F. Supp. 2d 286, 288 (D.D.C. 2011) ("Because it has not paid, committed to paying, or sought a waiver of the $1,267.02 in fees, Island Film has not exhausted its administrative remedies."); *Jones v. U.S. Dep't of Justice*, 653 F. Supp. 2d 46, 49-50 (D.D.C. 2011) ("Plaintiff has neither committed to paying the fees without conditions the court declines to accept, nor disputed the agency's aggregation decision or sought a fee waiver at the administrative level. . . . Accordingly, because plaintiff has not exhausted his administrative remedies, the complaint will be dismissed without prejudice, and all pending motions will be denied as moot."); *Saldana v. Bureau of Prisons*, 715 F. Supp. 2d 10, 16-17, 21 (D.D.C. 2010) (agreeing that "because Saldana neither reduced the scope of his January 2006 request nor paid, or agreed to pay, the associated search fee, [he] therefore has not exhausted his administrative remedies").

plaintiffs cannot establish that the CIA has adopted policies or practices that violate the FOIA, its four policy and practice challenges should be dismissed for failure to state a claim upon which relief can be granted.  Similarly, Counts 21 and 22 must be dismissed because they seek relief for agency actions fully consistent with the FOIA.

> ### A.    Count 5 Fails to State a Claim Because the CIA is Not Required to Provide Free Search Time Before a FOIA Request is Perfected.

The CIA requires requesters to perfect their request by committing to pay fees that may accrue or agreeing to limit the search to specific amounts.  *See* 32 C.F.R. § 1900.12(c) ("Communications which do not meet these requirements will be considered an expression of interest and the Agency will work with, and offer suggestions to, the potential requester in order to define a request properly.").  Only after the request is perfected will the CIA process the request, including providing for free the first two hours of search time.  *See* 32 C.F.R. § 1900.13(i)(3) (providing the free search time set forth in 5 U.S.C. § 552(a)(4(A)(ii)(III)). National Security Counselors challenges this policy.[6]  As discussed above, plaintiff has failed to exhaust this claim.

This alleged practice is fully consistent with the FOIA.  As a sophisticated FOIA requester, plaintiff is certainly aware that requiring a perfected request before processing a request is an ordinary agency practice.  *See, e.g.*, *Reynolds v. Att'y Gen.*, 391 F. App'x 45, 46 (2d Cir. 2010) ("The record shows, and Reynolds does not deny, that he has not yet paid the required fees or narrowed his request to the first two-hours of searching and the first 100 pages of records,

---

[6]  To the extent that plaintiff's ambiguous framing of the alleged policy suggests any other practice—such as refusing to process perfected requests that capped the fees a requester would pay—the Amended Complaint fails to meet the *Iqbal* pleading standard.  *See Iqbal*, 129 S. Ct. at 1949 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  *Compare* Am. Compl. ¶ 74 *with id.* ¶¶ 70, 72.

which the DOJ's regulations would allow him to receive for free.").[7]  Plaintiff's argument

depends on the  novel theory that the FOIA statute's fee provision exempts requesters from

complying with agency regulations setting prerequisites for a perfected request, at least until

after the two free hours of searches have been conducted.  Many agencies' FOIA regulations

expressly reject such a structure.  *See e.g.*, 26 C.F.R. § 601.702(c)(4)(ii) (IRS regulation

providing that "[t]he requirements of this paragraph *shall not be deemed met* until the requester

has explicitly agreed to pay the fee applicable to the request for records, if any, or has made

payment in advance of the fee estimated to be due."); 28 C.F.R. § 16.11(e) (DOJ regulation

requiring that when "a requester has been notified that actual or estimated fees amount to more

than $25.00, the request *shall not be considered received* and further work shall not be done on it

until the requester agrees to pay the anticipated total fee.") (emphasis added to both quotes).[8]

       Plaintiff's theory depends on a FOIA provision that does not address the sufficiency of a

---

[7]  *See also Skrzypek v. U.S. Dep't of Treasury*, No. 06-1129, 2007 WL 2506440, at *1 (D.D.C. Aug. 31, 2007) ("Plaintiff was informed about options to reduce costs by "limiting the [requested] documents to a specific category or categories," limiting the processing of records to an amount he was willing to pay, or terminating the search at the first two free hours."); *Schoenman v. FBI*, No. 04-2202, 2006 WL 1126812, at *3 (D.D.C. Mar. 31, 2006) (the CIA "inform[ed] Plaintiff that the search fees could exceed $900.00 and that the CIA needed a commitment from Plaintiff to pay fees before proceeding with his request. . . . Plaintiff's counsel informed the CIA that he would commit to pay up to $300.00 for a search on only two of the seven subjects"); *Hall v. CIA*, No. 04-0814, 2006 WL 197462, at *1 (D.D.C. Jan. 25, 2006) ("[T]he court denied Hall's motion for a "public interest" fee waiver and granted the CIA's motion to require Hall to commit to payment of the search and copying fees before it conducted additional searches.").

[8]  *See also, e.g.,* 1 C.F.R. § 304.9(e) (Admin. Conf. of the United States); 4 C.F.R. § 201.10(a) (Recovery Accountability and Transparency Bd.); 5 C.F.R. § 1802.7(e) (Office of Special Counsel); 5 C.F.R. § 2604.504(a) (Office of Government Ethics); 10 C.F.R. § 1004.4(e) (Dep't of Energy); 10 C.F.R. § 1303.110(a) (Nuclear Waste Technical Review Bd.); 16 C.F.R. § 4.11(a)(1)(i)(D) (Federal Trade Comm'n); 18 C.F.R. § 401.109(a) (Delaware River Basin Comm'n); 19 C.F.R. § 201.20(e) (U.S. Int'l Trade Comm'n); 28 C.F.R. § 701.18(e) (Office of Independent Counsel); 29 C.F.R. § 1610.16(a) (Equal Employment Opportunity Comm'n); 37 C.F.R. § 203.6(e) (Copyright Office, Library of Congress); 40 C.F.R. § 1601.33(a) (Chemical Safety & Hazard Investigation Bd.); 49 C.F.R. § 7.42(c) (Office of the Secretary of Transp.).

request at all.  It merely states that "[n]o fee may be charged by any agency under this section . . . for any request [other than commercial use requests] for the first two hours of search time or for the first one hundred pages of duplication."  5 U.S.C. § 552(a)(4)(iv)(II).  Thus, nothing in the FOIA prevents an agency from first requiring that the payment and scope of a request be clear before any search is conducted.  *See Chaplin v. Stewart*, 796 F. Supp. 2d 209, 211-12 (D.D.C. 2011) ("It is undisputed (1) that defendant complied with DOJ regulations by informing plaintiff about the fee requirements and suggesting ways to reduce his costs, and (2) that plaintiff has neither paid nor committed to paying the assessed fees. Therefore, the Court, having no further statutory authority, finds that defendant is entitled to judgment as a matter of law."); *Research Air, Inc. v. Kempthorne*, 589 F. Supp. 2d 1, 10 & n.6 (D.D.C. 2008) ("Because Mr. Arment rejected the notion that he would be required to pay a fee, DOI properly refused to process his FOIA requests" where agency "demanded only that Mr. Arment either narrow his request in order to reduce their estimated costs or commit to future payment for the costs incurred by DOI in processing the search request").  Plaintiff's policy claim must be dismissed because it alleges no violation of the FOIA.

> **B.      Count 6 Fails to State a Claim Because the FOIA Permits the Direct Costs of Automated Computer Searches to be Recovered Through Fees.**

National Security Counselors alleges that the CIA has adopted a "policy, practice, or SOP of counting for fee purposes the time spent by a computer performing an automated search." Am. Compl. ¶ 82.  Plaintiff derives this alleged policy by speculation about the meaning of a single clause in a FOIA response letter.  The CIA explained in that letter that "the total search effort cannot be limited in an arbitrary way, such as the maximum amount that can be performed as you requested" because "some of the searches are automated, whereas others are not."  Am. Compl. ¶ 72.  Making several assumptions, plaintiff believes that the clause implies a policy

because he thinks it would have been an irrelevant thing to say "unless the CIA counts the time that a computer takes to perform an automated search with no human participation as part of the search time." *Id.* ¶ 80.  This thin basis for an allegation fails to provide sufficient factual content to meet the *Iqbal* pleading standard.  *See Iqbal*, 129 S. Ct. at 1949.  But even if the allegation were accepted as true for purposes of this motion to dismiss, plaintiff has alleged nothing inconsistent with the FOIA.

The FOIA provides that "[f]ee schedules shall provide for the recovery of only the direct costs of search, duplication, or review."  5 U.S.C. § 552(a)(4)(A)(iv).  The CIA's regulations specify the direct costs that may be encompassed in search fees, including the costs of electronic searches.  *See* 32 C.F.R. § 1900.02(e)(4) ("Search means all time expended in looking for and retrieving material that may be responsive to a request utilizing available paper and electronic indices and finding aids; it also means personnel hours of professional time or the dollar value equivalent in computer searches."); *id.* § 1900.13(g)(2) ("Personnel search time includes time expended in either manual paper records searches, indices searches, review of computer search results for relevance, personal computer system searches, and various reproduction services."); *see also Crooker v. CIA*, No. 86-3055, 1988 WL 50724, at *1 (D.D.C. May 10, 1988) (noting an agency letter requiring "plaintiff's commitment to pay all fees incurred for the search, computer time, and copying costs").

The CIA's reference to the "dollar value equivalent in computer searches" derives from Office of Management and Budget ("OMB") regulations which carefully consider how to ensure that only direct costs are charged:

> [T]he term "search time" in this context has as its basis, manual search. To apply this term to searches made by computer, OMB will determine the hourly cost of operating the central processing unit and the operator's hourly salary plus 16 percent. When the cost

> of search (including the operator time and the cost of operating the computer to process a request) equals the equivalent dollar amount of two hours of the salary of the person performing the search, i.e., the operator, OMB will begin assessing charges for computer search.

*See* 5 C.F.R. § 1303.40(h)(3)"); *see also id.* § 1303.40(b) ("OMB will charge at the actual direct cost of providing the service. This will include the cost of operating the central processing unit (CPU) for that portion of operating time that is directly attributable to searching for records responsive to a FOIA request and operator/programmer salary apportionable to the search."). This formula is routinely used by federal agencies and has not been rejected by courts.  *See, e.g.*, *Coven v. U.S. Office of Pers. Mgmt.*, No. 07-1831, 2009 WL 3174423, at *17-18 (D. Ariz. Sept. 29, 2009); *Strout v. U.S. Parole Comm'n*, 842 F. Supp. 948, 950 n.3 (E.D. Mich. 1994); Recovery Accountability and Transparency Bd., 4 C.F.R. § 201.8(c)(iii) ("Direct costs include the cost of operating a computer for the search time for requested records and the operator salary for the search."); Office of Pers. Mgmt., 5 C.F.R. § 294.109(c) ("If requested records are maintained in a computerized data base, OPM will use the following formula, suggested by OMB, to provide the equivalent of 2 hours manual search time free before charging for computer search time: The operator's hourly salary plus 16% will be added to the hourly cost of operating the central processing unit that contains the record information."); *see also* 1 C.F.R. § 304.9(c)(1)(3) (Administrative Conference of United States); 4 C.F.R. § 81.7(b)(4) (Gov't Accountability Office); 29 C.F.R. § 102.117(d)(2)(i)(D) (Nat'l Labor Relations Bd.); 37 C.F.R. § 203.6(b)(6) (Copyright Office).

Thus, plaintiff's allegation amounts to nothing more than the recovery of the cost of computer search time, which falls under the FOIA's definition of "direct cost."  Accordingly, this claim must be dismissed because the alleged policy, even if true, does not violate the FOIA.

C.     **Count 15 Fails to State a Claim Because the FOIA Does Not Require the CIA to Modify its Classified Information Technology System to Make its Records Reasonably Reproducible in the Unclassified Electronic Formats Sought by Some Requesters.**

Plaintiffs allege that the CIA has a "blanket policy of considering every record 'not readily reproducible in electronic format' with the exception of a select few categories of frequently requested records." Am. Compl. ¶ 135. Plaintiffs claim that this alleged policy violates Subsection (a)(3)(B) of the FOIA, which states:

> In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

5 U.S.C. § 552 (a)(3)(B). As relief, plaintiffs ask the Court to "compel[] CIA to utilize a more reasonable FOIA processing system that is in compliance with the electronic records provision of FOIA." Am. Compl. ¶ 138; *id.*, prayer ¶ 16.

Count 15 should be dismissed. The crux of the issue to plaintiffs is whether the CIA's information technology system itself violates the FOIA. *See* Am. Compl. ¶ 138 (seeking to force the CIA to "utilize a more reasonable FOIA processing system"). Accepting plaintiffs' factual allegations as true for purposes of this motion, it is clear that the CIA's information technology system complies with the FOIA. Accordingly, this count should be dismissed.

Plaintiffs are well aware that the CIA's "FOIA processing software is only located on its classified computer system" and they incorporate by reference the CIA's recent declarations explaining that "after processing records for release using that software it is unduly burdensome to then remove the records from the classified system and burn them to digital media." Am. Compl. ¶ 135 (citing the "CIA's filings in Case Nos. 11-443, 11-444"). In those cases, the CIA provided detailed explanations of its classified and unclassified information technology

29

systems, the reasons for their use, and why most FOIA productions are not "reasonably reproducible" in electronic format.  *See* Decl. of Scott Koch, Feb. 27, 2012, *Nat'l Security Counselors v. CIA*, No. 11-444 (D.D.C. Mar. 2, 2012), ECF No. 27-1; *see also* Decl. of Susan Viscuso, Dec. 13, 2011, and Suppl. Decl. of Susan Viscuso, Jan. 13, 2012, *Nat'l Security Counselors v. CIA*, No. 11-443 (D.D.C.), ECF Nos. 19-1, 21-1.  Such agency declarations about reproducibility must be given "substantial weight" by the Court.  *See* 5 U.S.C. § 552(a)(4)(B).  Yet, disposition without recourse to those declarations is appropriate here because the FOIA does not require what plaintiffs seek.

The CIA has fully complied with the FOIA's requirement that agencies "shall make reasonable efforts to maintain [their] records in forms or formats that are reproducible for purposes of this section."  5 U.S.C. § 552(a)(3)(B).  The plain meaning of the phrase "reproducible for purposes of this section" is that the agency's documents should be maintained in such a way that they are "available to any person" upon proper request under paragraph (3), *id.* § 552(a)(3)(A), and "available for public inspection and copying" if they meet the specifications of paragraphs (1) and (2), *id.* § 552(a)(2).  Support for this plain meaning is found in the fact that the reference to "this section" refers to the FOIA as a whole in direct contrast to the references to "paragraph," "subsection," and "subparagraph" in § 552(a)(3)(A) and (B).  The CIA has met this "reproducibility" requirement; it regularly locates and reproduces records for release to FOIA requesters.  Indeed, plaintiffs do not allege that the CIA maintains records in nonreproducible formats.  *Cf. Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 63 (D.D.C. 2003) (holding paper copies of emails reproducible because they could "be easily duplicated on a copy machine"); FOIA Update, Vol. XI, No. 3, Issue C (1990) ("[A] record's format and ultimate compatibility with a particular data-processing system can entirely govern its essential

'readability' and, thus, its basic utility."). Instead, plaintiffs read into this provision the idea that an agency must change its records systems if doing so would make records more "readily reproducible" in the format desired by requesters.

This notion—that the FOIA requires agencies to create new ways of storing their records for the future convenience of requesters—has been soundly rejected. *See Schoenman v. FBI*, 764 F. Supp. 2d 40, 51 (D.D.C. 2011) ("[T]he CIA is under no obligation to reorganize its files to satisfy [plaintiff], and imposing [his] preferences upon the CIA would extend far beyond the sort of reasonable efforts required of agencies in responding to validly lodged requests under the FOIA." (citation omitted)); *Jackson v. U.S. Dep't of Labor*, No. 06-2157, 2008 WL 539925, at *5 (E.D. Cal. Feb. 25, 2008) (upholding agency "refus[al] to create an entirely new system of public access to internal documents"); *Laroche v. SEC*, No. 05-4760, 2006 WL 2868972, at *3 (N.D. Cal. Oct. 6, 2006), *aff'd*, 289 F. App'x 231 (9th Cir. 2008) (per curiam), (rejecting plaintiff's request to require agency to alter internet-based electronic database or to seek ad hoc report from the database's non-governmental owner); *TPS, Inc. v. U.S. Dep't of Defense*, 330 F.3d 1191, 1193 (9th Cir. 2003) (approving Dep't of Defense regulation stating that FOIA does not require "a significant expenditure of resources, thus not being a normal business as usual approach"); *Landmark*, 272 F. Supp. 2d at 63 ("FOIA does not require an agency to reorganize its files in anticipation of or in response to a FOIA request."); *cf. Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request [and therefore, a] requester is entitled only to records that an agency has in fact chosen to create and retain." (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975))).

What plaintiffs here seek is much more invasive and burdensome than what other

plaintiffs have sought under this provision.  Plaintiffs appear to demand that the CIA replace its

FOIA processing system or somehow move it to an unclassified information technology system

to make electronic productions less burdensome.  Am. Compl. ¶¶ 135, 138.  This is much more

ambitious than the plaintiff in *Landmark* who argued that Section 552(a)(3)(B) required "the

agency to maintain a central electronic file containing [the agency head's] emails." 272 F. Supp.

2d at 63.  Nevertheless, plaintiffs' request should be rejected for the same reason: "the agency

may keep its files in a manner best designed to suit its internal needs."  *Id.*  This is especially true

where, as here, the existing information technology is structured to protect the CIA's national

security responsibilities.  *See, e.g.*, *Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice*, 331

F.3d 918, 926-27 (D.C. Cir. 2003) ("It is well-established that the judiciary owes some measure

of deference to the executive in cases implicating national security."); *id.* at 927 ("[W]e have

consistently deferred to executive affidavits predicting harm to national security, and have found

it unwise to undertake searching judicial review.").  Accordingly, this claim must be dismissed

for failure to state a claim for violation of 5 U.S.C. § 552(a)(3)(B).

> **D.**     **Count 21 Fails to State a Claim Because the CIA Reasonably Construed Plaintiff's Ambiguous Request for Previously Released Documents.**

Count 21 challenges the CIA's interpretation of and swift action to fulfill a FOIA request

by National Security Counselors on behalf of Kathryn Sack.  It should be dismissed because the

CIA's interpretation of plaintiff's request for previously released documents was reasonable and

because Ms. Sack was not entitled to a waiver of the assessed duplication costs.

The CIA provides separate access to its previously released information:

> Database of "officially released information." As an alternative to
> extensive tasking and as an accommodation to many requesters,
> the Agency maintains a database of "officially released
> information" which contains copies of documents released by this
> Agency. Searches of this database, containing currently in excess
> of 500,000 pages, can be accomplished expeditiously. . . .

> Requesters interested in this means of access should so indicate in
> their correspondence.

32 C.F.R. § 1900.21(b) (emphasis added).  These documents are indexed in the CIA Records

Search Tool ("CREST"), an electronic database maintained by the CIA.  *See* Am. Compl. ¶ 177.

On September 6, 2011, National Security Counselors filed a FOIA request on behalf of Katelyn

Sack "for copies of the **attached thirty-two documents in the Central Intelligence Agency**

**("CIA") CREST system**."  *See* Exhibit A, FOIA Request F-2011-02158 (emphasis original).[9]

One week later, construing this to be a request for copies of the previously released documents

located through that online search tool, the CIA produced to plaintiff full copies of the thirty-two

documents along with a $13 fee for the duplication costs.  *See* Am. Compl. ¶ 178.

Plaintiff complains that the CIA "incorrect[ly] assum[ed] that she had requested the

thirty-two records as they were published in CREST."  Am. Compl. ¶ 182.  She alleges that the

request should not have been routed to the "officially released information" database because her

request also stated "[a]dditionally, records which are currently published in CREST in redacted

form should be reviewed for full release under FOIA."  *See* Am. Compl. ¶¶ 177, 182.  The

agency, however, made no assumption.  Instead, it was faced with a clear request for "copies" of

"thirty two documents" listed in the "CREST system."  The sentences that followed this one

appeared to contradict the bolded request.  But the CIA is entitled to interpret the scope of an

ambiguous request as long as its interpretation is reasonable.  *See Wilson v. U.S. Dep't of*

*Transportation*, 730 F. Supp. 2d 140, 154-55 (D.D.C. 2010); *Mogenhan v. Dep't of Homeland*

*Security*, No. 06-2045, 2007 WL 2007502, at *3 (D.D.C. July 10, 2007); *Adamowicz v. IRS*, 552

---

[9]  "While a court may not consider 'matters outside the pleadings' in evaluating a motion to
dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment under
Rule 56, *see* Fed. R. Civ. P. 12(d), documents that are referenced in, or an integral part of, the
complaint are deemed not 'outside the pleadings.'"  *Peters v. Dist. of Columbia*, __ F. Supp. 2d
__, 2012 WL 1255139, at *11 n.20 (D.D.C. Apr. 16, 2012) (relying on administrative charges
and right-to-sue letters issued in EEOC cases).

F. Supp. 2d 355, 362 (S.D.N.Y. 2008).  The CIA reasonably construed the request to be made to the officially released information database.  *See* 32 C.F.R. § 1900.21(b) ("Requesters interested in this means of access should so indicate in their correspondence.").

Resort to litigation over this issue is utterly wasteful.  On October 18, 2011, after plaintiff disputed the CIA's construction of her ambiguous letter, the agency offered to process plaintiff's request for re-review as a new request.  *See* Am. Compl. ¶ 180 ("However, we can open a new request to address this re-review if you wish.").  That offer provided the same relief that plaintiff now seeks through litigation, yet plaintiff refused to accept it and filed suit four months later.

Finally, plaintiff is not entitled to a refund of the $13 duplication fees that were charged reproducing documents pursuant to the original request.  The request could reasonably be construed to seek all thirty-two documents as they had previously been released.  Even if the request should have been read to also seek re-review of the redacted portions of the documents, it explicitly sought "copies" of "thirty-two documents."  And the CIA clearly disclosed that duplication costs would be charged:  "Please keep in mind that when you submit a FOIA request for CREST documents, you will automatically be charged reproduction costs for documents at ten cents per page beyond the first 100 pages, which are free."  CIA, 25 Year Program Archive Search, http://www.foia.cia.gov/search_archive.asp (last revised Aug. 3, 2011) (copy attached as Exhibit B).[10]

Count 15 should be dismissed for failure to state a claim.

---

[10] On a motion to dismiss for failure to state a claim, the Court may consider, inter alia, "matters of which we may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Materials published by a government agency on its website are matters of which judicial notice is commonly taken.  *See, e.g.*, *Seifert v. Winter*, 555 F. Supp. 2d 3, 11 n.5 (D.D.C. 2008).

**E.     Count 22 Fails to State a Claim Because Plaintiff Has No Right to the Production of Redundant Records, Especially Where Any Ambiguity in the Production Was the Result of Plaintiff's Own Actions.**

National Security Counselors filed the FOIA request at issue in Count 22 because it is unwilling to review the material it requested and received from the CIA.  In response to a multi-part FOIA request, the CIA produced over 1000 records.  Plaintiff professed to be unable to identify which records went with which subpart of his request.  Because the FOIA does not oblige the CIA to create new records or to answer questions about agency records, the CIA was not required to explain the produced records to plaintiff.  *See Scaff-Martinez v. DEA*, 770 F. Supp. 2d 17, 22-23 (D.D.C. 2011); *see also Prison Legal News v. Lappin*, 780 F. Supp. 2d 29, 45 (D.D.C. 2011) (agreeing that defendant "has no responsibility under the FOIA to organize the responsive records in any particular manner or provide explanatory material to accompany the responsive records").  Seeking to evade these realities, plaintiff filed a deliberately redundant request with the intent of forcing the CIA to answer its question.  *See* Am. Compl. ¶ 192.  The FOIA, however, does not require an agency to indulge a requester who repeatedly seeks the same records.  *See Weisberg v. U.S. Dep't of Justice*, 848 F.2d 1265, 1271 (D.C. Cir. 1988) (upholding district court decision not to compel production of documents that were "essentially duplicative of information already released").  Accordingly, this claim must be dismissed.

On May 4, 2010, plaintiff submitted two FOIA requests seeking copies of hundreds of third-party FOIA requests that the CIA had denied in fiscal years 2006, 2008, and 2009, along with the CIA's response letters to each request.  *See* Am. Compl. ¶¶ 184, 186, 194; *see also* Exhibits C and D.[11]  Three months later, in a telephone call, plaintiff expanded the requests and proposed that both be combined into one request.  Am. Compl. ¶ 186; Am. Compl. ¶ 90, *Nat'l*

---

[11]  These copies of the FOIA requests appear on plaintiff's website: http://www.nationalsecurity law.org/foia.html, and are appropriate for consideration on a motion to dismiss.  *See supra* n.13.

*Security Counselors v. CIA*, No. 11-444 (D.D.C. Mar. 21, 2011).  On August 31, 2011, the CIA

produced the requested records—more than 1,000.  *See* Am. Compl. ¶ 188; *see also* Pl.'s Opp'n

Def.'s Mot. Summ. J. 5, *Nat'l Security Counselors*, No. 11-444, ECF No. 26 (Feb. 8, 2012).

Included in the production were the denial letters explaining why the FOIA requests were

rejected.  *See* Def.'s Mot. Summ. J. 6-8, *Nat'l Security Counselors*, No. 11-444, ECF No. 20

(Dec. 20, 2011).  Plaintiff does not dispute the scope of the production in that case, only

challenging the withholding of eleven documents in full or in part.  *See* Pl.'s Opp'n Def.'s Mot.

Summ. J. 28-29, *Nat'l Security Counselors*, No. 11-444.

     Unwilling to review the 1,000 documents it requested and received, plaintiff claims it

cannot identify which records are responsive to the first part of the first FOIA request—fifteen

requests in fiscal year 2008 denied because the information sought was not "reasonably

described."  *See* Am. Compl. ¶ 189.  Yet, the majority of the records requested relate to other

fiscal years.  *See* Exhibits C and D (requesting at least 528 records from fiscal years 2006 and

2009).  And the relevant distinction within fiscal year 2008 is between 15 "records not

reasonably described" and 290 "improper FOIA request[s] for other reason[s]."  *See id.*  This

distinction should be readily discernible from the CIA's response letters which were produced to

plaintiff.  *See, e.g.*, Nat'l Security Counselors, Document Vault, Unreasonably Described FOIA

Requests, http://www.nationalsecuritylaw.org/files/received/CIA/Unreasonably

_described_requests-2009_Other.pdf (containing numerous CIA response letters specifically

identifying the requester's failure to "reasonably describe" the information sought).

     Nevertheless, plaintiff filed a new FOIA request seeking "the first page of the initial

response letter for each of the fifteen FOIA requests."  Am. Compl. ¶ 190.  The CIA denied the

request as duplicative.  *Id.* ¶ 191.  Plaintiff's blatant effort to burden FOIA offices and pressure

them to create records for plaintiff's convenience, *see id.* ¶ 190 ("if you prefer to just provide us with a list of the fifteen requests . . . we will accept that in lieu of the [requested] records"), is outside of the purpose of the FOIA.  The CIA is not obligated to produce redundant records to the same requester.  *See Weisberg*, 848 F.2d at 1271; *CareToLive v. FDA*, 631 F.3d 336, 343 (6th Cir. 2011) ("when the data retrieved would only be cumulative of items already produced, attempting to perform this type of data retrieval is unnecessary"); *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1243 (10th Cir. 2009) ("We know of no requirement that requires the [agency] in denying a fee waiver request to catalogue the e-mails already produced.").  Accordingly, this claim should be dismissed for failure to state a claim.

### F.   Count 25 Fails to State a Claim Because the CIA's Statutory Obligation to Protect Intelligence Sources and Methods Remains, and Qualifies Under Exemption 3.

Plaintiffs claim that "every time CIA invokes the 'intelligence sources and methods' language of the National Security Act as an Exemption (b)(3) withholding statute at the administrative stage, it is doing so without authorization from the agency vested with that authority."  Am. Compl. ¶ 216.  This claim fundamentally misinterprets the applicable statute and should be dismissed for failure to state a claim.

The CIA has long relied on the National Security Act of 1947, as amended (the "NSA"), as a basis for withholding "intelligence sources and methods" from release under the FOIA.  *See* 50 U.S.C. § 403-3(c)(7) (2001) ("In the Director [of Central Intelligence]'s capacity as head of the intelligence community, the Director shall . . . protect intelligence sources and methods from unauthorized disclosure.")).[12]  For decades this has been recognized as an appropriate application

---

[12]  This provision was first codified at 50 U.S.C. § 403(d)(3), and was renumbered and rephrased as § 403-3(c)(5) in 1992.  The addition of other Director responsibilities made it § 403-3(c)(6) in 1996 and § 403-3(c)(7) in 2001.  Courts have frequently cited to historic codifications of the provision rather than the then-current numbering.

of FOIA Exemption 3.  *See Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *Marks v. CIA*, 426 F. Supp. 708, 710-11 (D.D.C. 1976).  In 2004, the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), Pub. L. No. 108-458, 118 Stat. 3638, made the new Director of National Intelligence ("DNI") the leader of the intelligence community.  Section 102(A)(i)(1) of the IRTPA requires the DNI to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1) (as codified).

Courts have never concluded that these changes alter the CIA's responsibility to protect intelligence sources and methods or remove the CIA's ability to assert Exemption 3 over such materials.  *See, e.g.*, *Moore v. CIA*, 666 F.3d 1330, 1331 n.2 (D.C. Cir. 2011); *ACLU v. U.S. Dep't of Justice*, 628 F.3d 612, 626-27 (D.C. Cir. 2011); *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *Morley v. CIA*, 508 F.3d 1108, 1125-26 (D.C. Cir. 2007); *Schoenman v. FBI*, __ F. Supp. 2d. __, No. , 2012 WL 171576, at *9-10 (D.D.C. Jan. 23, 2012); *ACLU v. Dep't of Justice*, 808 F. Supp. 2d 280, 289-90 & n.2, n.3 (D.D.C. 2011); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 231-32 (D.D.C. 2011); *Int'l Counsel Bureau v. CIA*, 774 F. Supp. 2d 262, 273-74 (D.D.C. 2011); *Subh v. CIA*, 760 F. Supp. 2d 66, 70-71 (D.D.C. 2011).  *See also Berman v. CIA*, 501 F.3d 1136, 1140 & n.1 (9th Cir. 2007) (noting the statutory change but addressing language at time of FOIA request); *Wolf v. CIA*, 473 F.3d 370, 377 n.6 (D.C. Cir. 2007) (same).  Indeed, while ultimate oversight shifted from the CIA to the DNI, the President specifically preserved the obligation of the CIA Director to protect intelligence sources and methods.  *See, e.g.*, Exec. Order 12333 § 1.6(d), 46 Fed. Reg. 59941 (Dec. 4, 1981), as amended by Exec. Order 13470, 73 Fed. Reg. 45,323 (July 30, 2008), (requiring the CIA Director and other heads of intelligence community elements to "[p]rotect intelligence and intelligence sources, methods, and activities . . . in accordance with guidance from the [DNI]").  The CIA's

specific responsibilities are further elucidated by the CIA Act:

> In the interests of the security of the foreign intelligence activities of the United States and in order further to implement section 403-1(i) of this title that the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the [CIA] shall be exempted from . . . . the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency[.]

50 U.S.C. § 403g (as amended by the IRTPA).

Thus plaintiffs err when asserting that the CIA's actions are *ultra vires* when it protects intelligence sources and methods without a specific authorization memorandum from the DNI.[13] Such an interpretation would have implications far beyond the FOIA, casting doubt on the CIA's daily adherence to Executive Order 12333, as amended, and 50 U.S.C. § 403g, not to mention the actions of other members of the intelligence community.  Accordingly, this policy claim must be dismissed because it alleges no violation of FOIA Exemption 3.

## IV. COUNT 23 AGAINST THE OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE MUST BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS UNDER RULE 12(b)(5).

In the Amended Complaint, National Security Counselors added one claim against a new defendant, the Office of the Director of National Intelligence ("ODNI").  *See* Am. Compl. ¶¶ 195-201.  However, plaintiff has refused to serve that agency defendant with the Amended Complaint.  *See* E-Mail from Kelly McClanahan to Galen Thorp (Mar. 23, 2012) (attached as Exhibit E).  Accordingly, Count 23 should be dismissed under Rule 12(b)(5) for insufficient

---

[13] As plaintiffs note, there have been a handful of occasions when the DNI has issued memoranda for specific FOIA cases.  *See* Am. Compl. ¶ 212; *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 501-02 (S.D.N.Y. 2010); *Gerstein v. CIA*, No. 06-04643, 2008 WL 4415080, at *9 n.16 (N.D. Cal. Sept. 26, 2008); *Talbot v. CIA*, 578 F. Supp. 2d 24, 29 n.3 (D.D.C. 2008).  As the above authorities demonstrate, however, that has never been the exclusive means of exercising this responsibility.

service of process.  *See Koerner v. United States*, 246 F.R.D. 45, 48 (D.D.C. 2007).[14]

Under Rule 12(b)(5), "[i]f the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint[.]  Upon such a motion, the plaintiff carries the burden of establishing that he has properly effected service." *McAllister v. Potter*, __ F. Supp. 2d __, 2012 WL 540080, at *2 (D.D.C. Feb. 21, 2012).  Service of process is prerequisite to the Court's exercise of personal jurisdiction over a defendant.  *Murphy Bros. Inc. v. Michetti Pipe Stringing Inc.*, 526 U.S. 344, 350 (1999).  The requirement ensures that defendants receive adequate notice of proceedings against them.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).  Failure of service is a fatal jurisdictional defect.  *Cambridge Holdings Grp. v. Fed. Ins. Co.*, 489 F.3d 1356, 1361 (D.C. Cir. 2007) (noting that "unless the procedural requirements of effective service of process have been satisfied, the court lacks personal jurisdiction to act with respect to that defendant at all.").  Accordingly, courts routinely dismiss actions when service is improper. *See, e.g.*, *Koerner*, 246 F.R.D. at 48.

Plaintiff "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law."  *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987).  Rule 4(i) establishes that to sue a federal agency, a plaintiff must serve "the Attorney General, the U.S. Attorney, *and* the agency whose action is at issue." *Koerner*, 246 F.R.D. at 48; *see also Shore v. Henderson*, 168 F. Supp. 2d 428, 430 (D.D.C. 2001) ("[I]t is commonly understood that the rule requires *both* the agency be served under Rule 4(i)(2)[] *and* the United States be served under Rule 4(i)(1).").  Plaintiff here has refused to serve

---

[14]  Although Rule 4(m) provides plaintiffs 120 days to effect service, dismissal without prejudice is warranted here, even though that time has not run, because plaintiff has affirmatively stated its refusal to effect service.  *See* Exhibit E.  Because there is no possibility that National Security Counselors will effect service without a ruling from the Court, there is no need to wait until July to resolve whether service on a new agency defendant is required by the Federal Rules.

the agency.  *See* Exhibit E.  Instead, it claims that electronic service upon the United States and a *different* agency is sufficient.  *Id.*

Plaintiffs served the United States, the U.S. Attorney, and the sole original defendant, the CIA, with a summons and the initial complaint.  *See* Pls.' Proof of Service, ECF No. 4.  Appearances were entered on behalf of the CIA, agreeing to accept electronic service of future filings on the CIA.  *See* Notices of Appearance, ECF Nos. 7, 8; LCvR 5.4(b)(6).  Soon thereafter, plaintiffs filed an Amended Complaint adding additional claims against the CIA and a claim against a new defendant, the ODNI.  *See* Am. Compl.  Plaintiff maintain that because it has sued a federal agency and notified the United States, it does not need to serve process on a new agency defendant.  This claim is baseless.

Not only does the failure to serve the new agency defendant make service incomplete as to that claim, *see, e.g.*, *Koerner*, 246 F.R.D. at 48 ("The United States is not 'served' until and unless all three entities are served; therefore, there is no obligation for the United States to file any Answer or other pleading."), but also, the time to respond to a FOIA suit runs from the date of service "upon the defendant."  5 U.S.C. § 552(a)(4)(C).  ODNI, the defendant, has never been served with "the pleading in which such complaint is made."  5 U.S.C. § 552(a)(4)(C).  Nor is the CIA entitled to accept service of process on the ODNI's behalf.  *See* 32 C.F.R. § 1702.3(a)(2) ("Where service of process by registered or certified mail is authorized by law, only an OGC attorney may accept such service of process upon the ODNI . . . , unless otherwise expressly authorized by the General Counsel. . . . Service of process by mail must be addressed to the Office of the Director of National Intelligence, Office of General Counsel, Washington, DC 20511, and the envelope must be conspicuously marked "Service of Process."); *see also id.* 1702.3(a)(1) ("Unless otherwise expressly authorized by the General Counsel, personal service

of process upon the ODNI . . . may be accepted only by an OGC attorney at ODNI

Headquarters.").  The claim against the ODNI must be dismissed.

## CONCLUSION

For all the reasons stated above, the Court should grant Defendants' partial motion to

dismiss plaintiffs' First Amended Complaint.


Dated:  May 1, 2012                          Respectfully submitted,

                                             STUART F. DELERY
                                             Acting Assistant Attorney General

                                             RONALD C. MACHEN
                                             United States Attorney

                                             ELIZABETH J. SHAPIRO
                                             Deputy Director
                                             Civil Division

                                             /s/ Galen N. Thorp_____
                                             GALEN N. THORP (VA Bar # 75517)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             P.O. Box 883, Room 6140
                                             Washington, D.C. 20530
                                             Tel: (202) 514-4781
                                             Fax: (202) 616-8460
                                             E-mail: galen.thorp@usdoj.gov

                                             Attorneys for Defendant