UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL SECURITY COUNSELORS, *et al.*

Plaintiffs,

v.

CENTRAL INTELLIGENCE AGENCY, *et al.*

Defendants.

Civil Action No. 12-284 (BAH)

Judge Beryl A. Howell

**MEMORANDUM AND ORDER**

On March 20, 2013, the Court granted in part and denied in part the defendants' Partial Motion to Dismiss the plaintiffs' First Amended Complaint, ECF No. 14. *See* Order dated Mar. 20, 2013, ECF No. 50; *see also Nat'l Sec. Counselors v. CIA*, No. 12-284, 2013 WL 1141768 (D.D.C. Mar. 20, 2013). The plaintiffs have filed a partial motion for reconsideration of that Order pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. *See* Pls.' Mot. for Partial Recons. ("Pls.' Mot."), ECF No. 54. For the reasons discussed below, the Court denies that motion.

At the outset, the Court notes the procedural error in the plaintiffs' motion. The plaintiffs have filed a motion pursuant to Rules 59(e) and 60(b), which permit a plaintiff to seek (1) alteration or amendment of a final, appealable judgment; and (2) relief from a final, appealable judgment, respectively. *See* FED. R. CIV. P. 59(e), 60(b). The Court's March 20, 2013 Order, however, was not a final, appealable judgment, and therefore it is not the proper subject of a motion under Rules 59(e) and 60(b). Rather, the Court's March 20, 2013 Order was interlocutory, and therefore reconsideration of that Order would be, if at all, pursuant to Rule 54(b), not 59(e) or 60(b). The plaintiffs concede this error in their reply brief. *See* Pls.' Reply in Supp. Mot. for Partial Recons. ("Pls.' Reply") at 2 n.1, ECF No. 58.

1

A district court may revise any of its interlocutory decisions "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); *accord Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment."). Rule 54(b) "recognizes [the district court's] inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985)). To determine whether "justice requires" reconsideration, a court is to consider, among other possible grounds, whether there has been "an intervening change in the law." *See, e.g.*, *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 286 F.R.D. 117, 125 (D.D.C. 2012) (quoting *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)). In the instant case, the plaintiffs contend that, in this case, "there is a need to correct a clear error and prevent manifest injustice, and there has been an intervening change in controlling law." *See* Pls.' Mem. in Supp. Mot. for Partial Recons. ("Pls.' Mem.") at 2, ECF No. 54. The Court disagrees on both counts.

A. **The D.C. Circuit's Decision in *CREW v. FEC* Did Not Abrogate this Court's Previous Ruling.**

Beginning with the purported "change in controlling law," the plaintiffs contend that a recent decision by the D.C. Circuit held "that the type of agency response this Court held to trigger an administrative appeal requirement did not, thereby invalidating this Court's holding that Plaintiffs failed to exhaust their administrative remedies for their requests at issue in [Counts Nineteen and Twenty-Six of the First Amended Complaint]." Pls.' Mot. at 1 (citing *Citizens for Responsibility & Ethics in Wash. v. FEC* ("*CREW*"), 711 F.3d 180 (D.C. Cir. 2013)). In its March 20, 2013 decision, this Court held that the CIA's response to three Freedom of

2

Information Act ("FOIA") requests submitted by plaintiff National Security Counselors ("NSC"), which lacked an estimate of the volume of material withheld in response to those requests, required actual, as opposed to constructive, exhaustion of NSC's administrative remedies prior to filing suit. *See Nat'l Sec. Counselors*, 2013 WL 11417668, at *13–14. As a result, the Court held that NSC had failed to exhaust its administrative remedies with respect to those three FOIA requests, which were pleaded in Counts Nineteen and Twenty-Six of the plaintiffs' First Amended Complaint. *See id.* at *14.

The FOIA provides that, upon a request for records, an agency shall "determine within 20 [working] days . . . after the receipt of such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal." 5 U.S.C. § 552(a)(6)(A)(i). In *CREW*, the D.C. Circuit clarified the meaning of the word "determination" in 5 U.S.C. § 552(a)(6)(A). *See CREW*, 771 F.3d at 184–86. Under the FOIA, a requester "'shall be deemed to have exhausted his administrative remedies'" if "an agency fails to make and communicate its 'determination' whether to comply with a FOIA request within certain statutory timelines." *Id.* at 184 (quoting 552(a)(6)(C)(i)).[1] "In short," the Circuit said, "a requester must exhaust administrative appeal remedies if the agency made and communicated its 'determination' within 20 working days (or 30 working days in 'unusual circumstances')." *Id.* at 185. Thus, the Circuit observed that "the critical question" is: "[W]hat constitutes a 'determination' so as to trigger the exhaustion requirement?" *Id.*

The D.C. Circuit held in *CREW* that a "determination" requires an agency to "at least (i) gather and review the documents; (ii) determine and communicate the scope of the documents

---

[1] For an initial FOIA request, as opposed to an administrative appeal, the relevant statutory time limit is twenty working days. *See* 5 U.S.C. § 552(a)(6)(A)(i).

3

it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188.  It is the second of these requirements that the plaintiffs argue is an intervening change in the controlling law.  In particular, the plaintiffs argue that "determine and communicate the scope of the documents [the agency] intends to . . . withhold" means "give[] [an] estimate of the volume of withheld records." *See* Pls.' Mem. at 4.  The Court does not believe, however, that the D.C. Circuit's holding in *CREW*, and in particular its use of the word "scope," can be stretched as far as the plaintiffs contend.

The Court does not read the decision in *CREW* to require agencies to provide a volume estimate of withheld material before a requester is required to pursue an administrative appeal.  The thrust of *CREW* is that, to comply with the FOIA's time limits in issuing a "determination," an agency cannot "simply decide to later decide."  *See CREW*, 711 F.3d at 186; *see also id.* ("[T]he 'determination' must be substantive, not just a statement of a future intent to produce non-exempt responsive documents.").  In particular, the *CREW* Court was concerned with a FOIA "Catch-22," whereby an agency expresses an intention to comply with a request but does not provide the requester with notice of its right to administrative appeal nor any concrete indication about whether or why the agency will be producing or withholding any records.  *See id.*  If such a response were accepted as a "determination," the Circuit explained, a requester would be unable to appeal "because the agency has not provided the necessary information" and would be unable to sue "because the requester has not appealed within the agency."  *Id.*  The *CREW* decision makes clear that an agency may not rely on such a Catch-22 in order "to keep FOIA requests bottled up in limbo for months or years."  *Id.* at 187.  Indeed, these concerns raised by *CREW* about agency feet-dragging are exactly why the FOIA includes a constructive

4

exhaustion provision.  As this Court stated in its March 20, 2013 Memorandum Opinion, "[c]onstructive exhaustion in the FOIA is a privilege granted only to individuals whose requests for records have essentially been ignored." 2013 WL 1141768, at *14.  The D.C. Circuit in *CREW* affirmed that understanding of the FOIA and clarified that an agency will be considered to have ignored a FOIA request if the agency merely provides "a statement of future intent to produce non-exempt responsive documents." *CREW*, 711 F.3d at 186.

In the instant case, the CIA provided much more than "a statement of a future intent to produce non-exempt responsive documents" when it responded to the FOIA requests at issue. *See id.*  With respect to the three FOIA requests contained in Counts Nineteen and Twenty-Six that were dismissed,[2] the CIA (1) produced to NSC all responsive, non-exempt records, (2) informed NSC that it was withholding all other responsive records, (3) specified which exemptions it was claiming to justify the withholding of responsive records, and (4) notified NSC of its right to appeal the determination administratively.  *See* Defs.' Opp'n to Pls.' Mot. for Partial Recons. ("Defs.' Opp'n") Exs. A–C, ECF No. 57-1 (copies of CIA's letters communicating its determinations).  Under *CREW*, no more is required to trigger a requester's obligation to exhaust administrative remedies.

It is true that, in *CREW*, the Circuit used the term "scope" throughout its opinion, but it did not give that word any precise definition.[3]  The plaintiffs would have the word "scope" mean "volume estimate," *see* Pls.' Reply at 5 (contending that *CREW* contains "a tacit acknowledgement of the statutory [volume estimate] requirement"), but the Circuit closely

---

[2] As the Court previously noted, the two requests from Count Twenty–Six that the CIA contends were not exhausted are FOIA Request Nos. F–2011–1891 and F–2012–318.  *See* First Am. Compl. ¶¶ 229–32, ECF No. 9.

[3] Although the *CREW* Court did not specifically define the word "scope" in its opinion, it is clear from the Circuit's recitation of the facts that the "scope" found to be lacking from the agency's response was "a more specific statement about what documents the FEC would produce and what exemptions the FEC would claim."  *See CREW*, 711 F.3d at 183.  As is discussed in more detail above, the CIA provided such a statement to plaintiff NSC in the instant case.

scrutinized the text and structure of several provisions of the FOIA in reaching its holding without ever citing or referencing the FOIA's volume-estimate requirement. *See CREW*, 711 F.3d at 189 (analyzing "the default 20-working-day timeline, the unusual circumstances safety valve, the exceptional circumstances safety valve, and the prompt production requirement," but not the volume-estimate requirement).[4] If the Circuit intended the word "scope" to include a volume estimate for any withheld material, it would have said so. Since it did not, the decision in *CREW* does not abrogate this Court's previous conclusion that an agency determination need not include a volume estimate regarding any withheld material to require a requester to exhaust its administrative remedies before filing suit.

### B. The Court's Previous Ruling Regarding the Plaintiffs' Standing to Sue Does Not Warrant Reconsideration.

The second argument raised in the plaintiffs' partial motion for reconsideration is that "the Court erred by holding against Plaintiffs the fact that they did not include extrinsic information in their briefs to support their claim of future harm." *See* Pls.' Mot. at 1–2. This argument refers to the Court's previous ruling that the plaintiffs lacked standing to bring certain claims alleging policies or practices of the defendants because the plaintiffs failed to establish a likelihood of future harm. *See Nat'l Sec. Counselors*, 2013 WL 1141768, at *11. As the Court stated, "where FOIA requesters challenge an alleged ongoing policy or practice and can demonstrate that they have pending FOIA requests that are likely to implicate that policy or practice, future injury is satisfied." *Id.* at *10.

---

[4] The plaintiffs' argument is essentially that the volume-estimate requirement, 5 U.S.C. § 552(a)(6)(F), is impliedly subsumed within the requirement of a "determination" in 5 U.S.C. § 552(a)(6)(A), but that reading of the statute would make § 552(a)(6)(F) mere surplusage. The plaintiffs do not explain why this is an appropriate reading of the FOIA, and the Court finds that such a reading would "run[] afoul of the well-established principle of interpretation that condemning statutory language to the rubbish heap of surplusage is much to be avoided." *See United States v. McGoff*, 831 F.2d 1071, 1083 (D.C. Cir. 1987).

The plaintiffs' argument on this point compares the instant case with three related cases in which this Court found that plaintiff NSC had established a likelihood of future injury. The plaintiffs' counsel contends that "when [he] wrote the opposition briefs in the three related cases, he was a relatively new lawyer who had yet to receive a ruling from a judge on a motion to dismiss filed by a government agency." Pls.' Mem. at 5. As a result, "he included evidence gathered after the filing of the complaints" to support the likelihood of future injury. *See id.* After filing those opposition briefs, however, "the government vehemently criticized him for the inclusion of this evidence [in its reply brief] with a long line of case law, which he had no reason to question." *Id.* Thus, plaintiffs' counsel explains, "the next time that he was faced with a motion to dismiss . . . he conscientiously attempted to prove his case without submitting extrinsic evidence, so as not to again violate what he considered to be the controlling law and earn a rebuke from the Court." *Id.* at 5–6. He says that, once this Court found standing in the three related cases, "it was too late to go back and reargue CIA's motion to dismiss in *this* case, so there was nothing to be done." *Id.* at 6 (emphasis in original).

First, the plaintiff is confused about the introduction of "extrinsic evidence" in the context of a motion to dismiss for lack of subject-matter jurisdiction. When a defendant moves to dismiss a case for lack of subject-matter jurisdiction, as the defendants did in this case, *see* Defs.' Partial Mot. to Dismiss at 1, ECF No. 14, "the district court may consider materials outside the pleadings." *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Therefore, "extrinsic evidence" is perfectly appropriate, and sometimes necessary, for a court to consider in the context of a 12(b)(1) motion. Also, although it is often stated that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992), this standard is a

7

moving target because even after an initial complaint is filed, a plaintiff may amend the complaint with further allegations to support standing—at least until the court rules on the standing question. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 28 n.1 (D.C. Cir. 1990) ("The courts may also permit plaintiffs to amend their complaints to make the necessary allegations [to establish standing]."); *Coal. for Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 8 (D.D.C. 2010) ("[T]he law in this Circuit does, in fact, permit plaintiffs to submit post-complaint affidavits to demonstrate standing.").[5] Thus, it would be far too rigid to conclude that the only facts possibly relevant to standing are those in existence at the moment a plaintiff first initiates a lawsuit.

Second, although the Court is sympathetic to the apparent confusion experienced by plaintiffs' counsel, confusion about the relevant legal standard is not a proper ground for reconsideration. In any event, the Court finds the plaintiffs' argument a tough pill to swallow. In particular, this Court made clear in its October 2012 decision in the three related cases that "when a plaintiff alleges a future injury, common sense dictates that a court can and should consider the activities of the plaintiff during and after the time that the complaint is filed in order to assess the likelihood of . . . future injury." *See Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 262 (D.D.C. 2012). Over five months passed between that ruling and the Court's ruling on the motion to dismiss the plaintiffs' First Amended Complaint in the instant case. Yet, during that time the plaintiffs never sought to amend their complaint or submit further materials to

---

[5] *See also Lujan*, 504 U.S. at 598 n.4 (Blackmun, J, dissenting) (contending that "[t]he plurality perverts the standing inquiry" because "[t]he purpose of the standing doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties" and "[u]nder the the plurality's analysis, the federal courts are to ignore their *present* ability to resolve a concrete controversy if at some distant point in the past it could be said that [standing could not be established]" (emphasis in original)).

support their standing to sue. Thus, the plaintiffs' lamentation that "there was nothing to be done," Pls.' Mem. at 6, smacks of a self-fulfilling prophecy, and it does not constitute a "manifest injustice," *see id.*, that would require correction.[6] The plaintiffs thus have not presented any basis for the Court to reconsider its previous ruling in this case with regard to standing.

In light of the foregoing discussion, it is hereby

**ORDERED** that the Plaintiffs' Motion for Partial Reconsideration, ECF No. 54, is DENIED.

**SO ORDERED.**

Date: June 13, 2013

                                              /s/ *Beryl A. Howell*
                                              BERYL A. HOWELL
                                              United States District Judge

---

[6] The Court also finds it hard to believe that plaintiffs' counsel—who has consistently displayed a penchant for creative and contrarian legal arguments—meekly accepted the government's arguments regarding standing without at least notifying the Court that he was capable of presenting evidence of the likelihood of future injury.