# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY COUNSELORS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, *et al.*, <br><br> Defendants. | Civil Action No. 12-284 (BAH) <br><br> Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

This action was commenced over five years ago by the plaintiffs, National Security

Counselors ("NSC"), and three individuals (collectively, the "plaintiffs"), against the Central

Intelligence Agency ("CIA") and the Office of the Director of National Intelligence ("ODNI")

(collectively, the "defendants"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and five other statutes, and has already engendered three rounds of dispositive motions as

well as consideration of a motion for class certification and a motion for reconsideration.[1]  Only

one claim, Count Sixteen, is unresolved out of the original twenty-six asserted in the First

Amended Complaint ("FAC"), ECF No. 9.  Now pending before the Court are the defendants'

Renewed Motion for Summary Judgment on Count Sixteen ("Defs.' Mot."), ECF No. 105, and

the plaintiffs' Cross-Motion for Summary Judgment and Discovery ("Pls.' Cross-Mot."), ECF

No. 108.  For the reasons set out below, the defendants' motion is granted and the plaintiffs'

motion is denied.

---

[1]        NSC is a Virginia nonprofit organization and the individual plaintiffs are Kathryn Sack, a Ph.D. student at the University of Virginia; Jeffrey Stein, a representative of the news media; and Mark Zaid.  First Amended Complaint ("FAC") at ¶¶ 3–7, ECF No. 9.

## I.    BACKGROUND

The factual and procedural history of this case is fully described in prior opinions issued in this case and, thus, the background summary here is limited to that relevant to Count Sixteen, the only count remaining at issue. *See Nat'l Sec. Counselors v. CIA* ("*NSC I*"), 316 F.R.D. 5, 8 (D.D.C. 2012) (denying plaintiffs' motion for class certification and pre-certification discovery); *Nat'l Sec. Counselors v. CIA* ("*NSC II*"), 931 F. Supp. 2d 77, 112 (D.D.C. 2013) (dismissing, on CIA's partial motion to dismiss, Counts One, Five, Six, Fifteen, Nineteen, Twenty-Five, and Twenty-Six, and denying defendants' motion to dismiss Counts Twenty-One and Twenty-Two); Memorandum and Order, dated June 13, 2013 ("*NSC III*") at 9, ECF No. 60 (denying plaintiffs' motion for partial reconsideration); *Nat'l Sec. Counselors v. CIA* ("*NSC IV*"), No. 12-cv-284, 2016 WL 6684182, at *35 (D.D.C. Nov. 14, 2016) (granting defendants' motion for summary judgment, in whole or in part, on Counts Two, Four, Seven, Nine, Ten, Eleven, Twenty, Twenty-One, and Twenty-Three, and denying motion as to, *inter alia*, Count Sixteen).  Thereafter, the parties requested a summary judgment briefing schedule regarding only Count Sixteen.  *See* Jt. Status Report (Apr. 28, 2017) at 1, ECF No. 104.

Count Sixteen claims that the CIA failed to comply with its FOIA obligations in responding to NSC's FOIA request number F-2011-01679, submitted on June 20, 2011, "for records pertaining to the search tools and indices available to the components in the Director of the Central Intelligence Agency Area ('DCIA Area') for conducting searches of their respective records in response to FOIA requests."  FAC ¶ 140.  The request indicated that responsive records would include "(1) Records which *describe* the search tools and indices" and "(2) The actual contents of the indices."  Defs.' First Renewed Mot. Summ. J. ("Defs.' First Renewed Mot."), Ex. 3, Decl. of Martha M. Lutz, Chief of Litigation Support Unit, CIA ("Lutz Decl.") ¶ 88, ECF

No. 74-4 (emphasis in original) (quoting Lutz Decl., Ex. TT, Letter from Kel McClanahan to Susan Viscuso, CIA, dated June 20, 2011 ("FOIA Request") at 113, ECF No. 74-5). The plaintiffs subsequently clarified, in the course of litigation, that the request did not encompass "standard training and help documents for programs like Microsoft Outlook, Lotus Notes, or Windows." Defs.' Mot., Ex. 1, Defs.' Stmt. of Undisputed Facts ("Defs.' SMF") ¶ 12, ECF No. 105-1.[2]

As discussed in *NSC IV*, the CIA's initial search was described as enlisting "individuals with personal knowledge of the search tool and indices used by Director's Area" to "search[ ] the Area's electronic records systems and conduct[ ] a manual search for records potentially responsive to NSC's request." *NSC IV*, 2016 WL 6684182, at *15. Those searches "yielded two responsive documents, one of which was released to NSC in redacted form and the other of which was withheld in full." *Id.* (citing Lutz Decl. ¶¶ 93–94). Finding that the CIA "provided little information regarding 'what parameters were used to accomplish the search, *i.e.*, whether the CIA searched for the indices themselves or what search terms the CIA used to identify responsive records,'" *id.* at *16 (quoting *NSC II*, 960 F. Supp. 2d at 152), summary judgment was denied on Count Sixteen "with respect to the adequacy of the CIA's search for documents responsive to FOIA request F-2011-01679," *id.* at *35. The Court noted, however, that "further explication by the CIA may demonstrate that the search was, indeed, adequate, such that summary judgment for the CIA is appropriate." *Id.* at *17. In addition, summary judgment was denied to the CIA for its withholdings, in Documents 555 and 556, of "information regarding internal databases and how personnel use those databases," *id.* at *23 (internal quotation marks omitted), under Exemption 3 and the CIA Act, since "the agency's exclusive reliance on the CIA Act to

<hr>

[2]  Although each exhibit and submission from the parties in support of and in opposition to the pending motions has been reviewed, only those exhibits necessary to provide context for resolution of the pending motions are cited herein.

withhold material that does not pertain to CIA personnel [wa]s misplaced," *id.* at *24. At the same time, summary judgment was granted to the CIA "in all other respects" on Count Sixteen. *Id.* at *35.

The CIA subsequently conducted a supplemental search for documents responsive to the FOIA request at issue in Count Sixteen. *See* Jt. Status Reports, ECF Nos. 101, 104. The CIA's original search relevant to Count Sixteen acknowledged the FOIA request's explicit reference to the "DCIA Area" and therefore involved individuals with personal knowledge of the search tools and indices used in the DCIA Area to search the DCIA Area's electronic records systems and to conduct a manual search for records potentially responsive to NSC's request. *NSC IV*, 2016 WL 6684182, at *15–16. This search yielded two responsive documents, C05848005 and C05848006, "one of which was released to NSC in redacted form and the other of which was withheld in full." *Id.* at *15; *see also* Defs.' SMF, Ex. A, Decl. of Antoinette B. Shiner, Info. Review Officer, Litigation Info. Review Office, CIA ("Shiner Decl.") ¶ 7, ECF No. 105-2. In addition, the CIA located three records responsive to a nearly identical request directed to the agency's Information Management Service ("IMS"), in which office "experienced IMS information management professionals transmit copies of the requests to the CIA directorate(s) they determine might reasonably be expected to possess records that are subject to the FOIA and responsive to a particular request." Defs.' SMF ¶¶ 3, 15.

For the supplemental search conducted after *NSC IV*, the CIA focused on fourteen offices that, prior to an agency reorganization in 2015, had made up the DCIA Area. *Id.* ¶ 16. These offices either searched their databases using key words, such as "guides," "search guides," and "reference guides," or conducted "manual searches for database manuals and user guides" for responsive records. *Id.* ¶ 20; *see also* Shiner Decl. ¶¶ 13–21. These supplemental searches

yielded ten documents, in addition to the five documents located in prior searches. Defs.' SMF ¶ 21; Shiner Decl. ¶ 17. Of the ten newly located documents, the CIA released one document in full; withheld five documents in part (Docs. 630, 631, 632, 633, and 634); and withheld four documents in full (635, 636, 637, and 638), pursuant to Exemptions 1, 3, 5, 6, and 7(E). *See* Shiner Decl. ¶ 17; Defs.' Reply Supp. Renewed Mot. Summ. J. & Opp'n Pls.' Renewed Cross-Mot. Summ. J. ("Defs.' Reply"), Ex. B, Suppl. *Vaughn* Index at 1–4, ECF No. 112-1.

The plaintiffs continue to challenge the adequacy of the search and, while not disputing the withholdings under Exemption 1; Exemption 3, pursuant to the Central Intelligence Agency Act; or Exemption 6, *see* Defs.' SMF ¶ 23 (citing Defs.' SMF, Ex. C, Email from Kel McClanahan to CIA, dated May 4, 2017, at 1, ECF No. 105-2); Pls.' Mem. Supp. Renewed Cross-Mot. Summ. J. ("Pls.' Mem.") at 7, ECF No. 108, the plaintiffs again contest the withholding of eight documents under Exemption 3, pursuant to the National Security Act (Docs. 630, 631, 632, 633, 634, 635, 636, and 638); one document under Exemption 5 (Doc. 637); and three documents under Exemption (7)(E) (Docs. 635, 636, and 638), *see* Pls.' Mem. at 7; Suppl. *Vaughn* Index at 1–4.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[3] The plaintiffs also allege that the "CIA failed to release all reasonably segregable non-exempt material" as directed in *NSC IV* by failing to release a redacted version of Doc. 556. Pls.' Mem. at 12. The CIA withheld Doc. 556 in full under Exemption 3, pursuant to the CIA Act, and under Exemption 5. *See NSC IV*, 2016 WL 6684182, at *23, 33, 35. The plaintiffs opted not to challenge the CIA's withholding of Doc. 556 under Exemption 5, however, focusing only on Exemption 3. *See* Pls.' Mem. at 12. Thus, although summary judgment was denied as to the CIA's withholding of Doc. 556 under Exemption 3 and the CIA Act, the CIA's continued withholding of Doc. 556 under Exemption 5, which was not contested by the plaintiff, is proper in light of the plaintiffs' waiver, and the CIA satisfied its obligation to release all reasonably segregable information. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."); *Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other.").

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks and alteration omitted) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). Indeed, the D.C. Circuit has observed that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

The FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)). Reflecting the necessary balance between the public's interest in governmental transparency and "legitimate governmental and private interests that could be harmed by release of certain types of information," *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and alteration omitted) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)), the FOIA contains nine exemptions, set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed," *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citation omitted); *see also Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010). "[T]hese limited

exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

In litigation challenging the sufficiency of "the release of information under the FOIA, 'the agency has the burden of showing that requested information comes within a FOIA exemption.'" *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999)); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171 (1993) (noting that "[t]he Government bears the burden of establishing that the exemption applies"); *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979) (finding that the agency invoking an exemption bears the burden "to establish that the requested information is exempt"); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014). This burden does not shift even when the requester files a cross-motion for summary judgment because "the Government 'ultimately [has] the onus of proving that the [documents] are exempt from disclosure,'" while the "burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Pub. Citizen Health Research Grp.*, 185 F.3d at 904–05 (alterations in original) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).[4]

An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the

---

[4] "The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).

adversary system to operate.[5] *See Judicial Watch*, 726 F.3d at 215 ("In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" (internal quotation marks and alteration omitted) (quoting *Consumer Fed'n*, 455 F.3d at 287)); *CREW*, 746 F.3d at 1088 (noting that an agency's burden is sustained by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith" (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009))); *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (instructing that an agency's description "should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection," which requirement "serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision"). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). District courts must "determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d

---

[5]    "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015).

518, 522 (D.C. Cir. 2015), by reviewing the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption," *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).

In addition, the court has an "affirmative duty" to consider whether the agency has produced all segregable, nonexempt information. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue sua sponte" (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007))); *see also Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007))); *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff."); 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

## III. DISCUSSION

As noted, summary judgment was previously denied to the defendants regarding the sufficiency of the CIA's search efforts for records responsive to Count Sixteen, and the plaintiffs continue to challenge the adequacy of the supplemental search as well as the withholdings under Exemptions 3, 5, and 7(E). Each of these challenges is addressed *seriatim* below.

**A.      The CIA's Search for Records Responsive to Count Sixteen Was Adequate**

**1.      *Legal Standard***

An agency "fulfills its obligations under [the] FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents" and if the agency "perform[s] more than a perfunctory search" to identify responsive records.  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). In this regard, "[t]here is no requirement that an agency search every record system," although "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Further, agencies are not obligated to search "beyond 'the four corners of the request,' nor are they 'required to divine a requester's intent.'" *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)); *see also Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

At the summary judgment stage, an agency meets its burden of demonstrating beyond material doubt that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby*, 920 F.2d at 68), "by submitting '[a] reasonably detailed affidavit, setting forth the

search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched,'" *id.* (alteration in original). Agency affidavits or declarations explaining search scope and methodology are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted); *Reporters Comm.*, 877 F.3d at 403 (agency affidavit was insufficient when it provided "no information about the search strategies of the [agency] components charged with responding to [a] FOIA request" and "no 'indication of what each [component's] search specifically yielded'" (quoting *Morley*, 508 F.3d at 1122)); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (recognizing substantial weight traditionally accorded to agency affidavits in FOIA adequacy-of-search cases). The FOIA requester bears the burden, then, of overcoming the presumption of good faith afforded to agency declarations by "rais[ing] substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials," *DiBacco*, 795 F.3d at 188 (internal quotation marks omitted), that the search was adequate. *See also Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (upholding agency response to FOIA request when requester "ha[d] not presented sufficient evidence to rebut [the] presumption" accorded to the agency's averments).

### 2. *Analysis*

The plaintiffs contend that "there is a genuine issue of material fact about the adequacy of CIA's searches" because the "CIA has not provided sufficient evidence to demonstrate that it did not artificially limit the offices it searched or interpret the request in an unreasonably narrow fashion to exclude records which would clearly be responsive to a liberal reading of the request." Pls.' Mem. at 4. The CIA's declarations, however, explain the thorough supplemental search

conducted after this Court's prior opinions.  Notably, in conducting the supplemental search, the

CIA "used the construction of the FOIA request that NSC urged in its opposition to the motion

for summary judgment and conducted a search for documents regarding any search tools and

indices available to the components of the Director's Area in conducting searches of their

respective records in response to FOIA requests," Shiner Decl. ¶ 10 (citing *NSC IV*, 2016 WL

6684182, at *16), thereby alleviating the plaintiffs' concerns regarding the CIA's interpretation

of the request.

Regarding the offices searched, the CIA explained that, "[a]t the time FOIA Request F-

2011-01679 was submitted and processed, the CIA organizational structure included the

'Director's Area,' which was comprised of the independent offices headed by individuals who

report directly to the Director of the CIA, such as the Office of General Counsel and the Office

of the Inspector General."  Defs.' Mem. Supp. Renewed Mot. Summ. J. ("Defs.' Mem.") at 4,

ECF No. 105 (citing Shiner Decl. ¶ 11).  After reviewing the plaintiffs' request, the Information

Management Services ("IMS") team determined that "the offices included in the Director's Area

were the only locations reasonably likely to have records responsive to NSC's FOIA request."

Shiner Decl. ¶ 11; *see also id.* ¶ 17 ("[T]he search analysts and [Information Management

Technical Officers ('IMTOs')] in this case searched every database and location reasonably

likely to contain responsive records.").[6]  Beginning in early 2015, however, the CIA reorganized

this structure, and "[t]here is no longer an overarching component called the Director's Area."

Defs.' Mem. at 4 (citing Shiner Decl. ¶ 11).  Rather, "[s]ome of the components formerly in the

Director's Area are now organized under the heading 'Enterprise Functions.'"  *Id.*  Thus, "IMS

focused its search on the search tools available to" fourteen different offices that "were part of the

---

[6]      IMS was also "a subcomponent of the Director's Area."  Shiner Decl. ¶ 9.

Director's Area as of the date of the NSC's request" and that were "reasonably likely to contain responsive records." Shiner Decl. ¶¶ 11, 17.[7]

IMS then assigned to each office "an experienced Information Management Technical Officer ("IMTO") to conduct the primary search," *id.* ¶ 12, who began by "identifying the specific databases, systems, or search tools available to the offices that were formerly in the Director's Area," *id.* The IMTOs also "added several databases and systems to the group of search tools available to the offices in the Director's Area." *Id.* While some IMTOs used specific search terms, *see id.* ¶ 14, others determined that using search terms "would have been an inefficient and ineffective method of searching for records about these particular databases," *id.* ¶ 13, and therefore conducted manual searches, *id.* The manual searches included searches of the relevant "databases, systems, or search tools for a search/user/reference guide or similar document for that particular database, system, or search tool," *id.* ¶ 13, and also included searches of "the IMS SharePoint and internal webpage for records pertaining to these databases, systems, or search tools," *id.* For databases that were not accessible to the IMTO, the CIA "subtasked a search analyst or IMTO in the specific office to conduct a search in the databases or systems specific to his or her office." *Id.* ¶ 14. As a result of this supplemental search, the CIA located ten additional responsive records, releasing one in full, withholding five in part, and withholding four in full. *See id.* ¶ 17; Suppl. *Vaughn* Index at 1–4. These procedures reveal that the CIA made a "good faith effort to conduct a search for the requested records, using methods

---

[7]    Those fourteen offices include Office of the General Counsel; Office of Congressional Affairs; Office of Public Affairs; Office of the Inspector General; Office of the Associate Director for Military Affairs; Chief Financial Officer; Chief Information Officer; Center for Mission Diversity and Inclusion; Office of Corporate Strategy, Policy, and Integration; Open Source Center; Chief of Human Resources; Director's Executive Support Staff; Office of Protocol; and Center for the Study of Intelligence. Shiner Decl. ¶ 11.

which can be reasonably expected to produce the information requested." *Reporters Comm.*, 877 F.3d at 402 (internal quotation marks omitted).

The plaintiffs nevertheless contend that the supplemental search was deficient because the CIA "fails to explain how many of those professionals—IMS or otherwise—knew in the first place how to search the relevant databases, if not a single record providing search instructions or guidance could be located for those databases." Pls.' Mem. at 2. Similarly, the plaintiffs fault the CIA's search for failing to reveal final versions of certain draft documents returned in the search. *Id.* at 6–7. The law is well established in this Circuit, however, that the adequacy of a FOIA search is judged not by the results of an agency's search but by the appropriateness of the agency's search methods. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Thus, a search is not automatically rendered inadequate by an agency's failure to locate a specific document. *See Reporters Comm.*, 877 F.3d at 408 ("That a few responsive documents may have slipped through the cracks does not, without more, call into question the search's overall adequacy."); *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("[A] search, under FOIA, is not unreasonable simply because it fails to produce all relevant material." (internal quotation marks omitted)). In any event, the CIA explained that "searching a shared drive or SharePoint site does not typically require an instruction manual, nor does a database that allows you to query (or search) using different fields." Defs.' Reply, Ex. A, Suppl. Decl. of Antoinette B. Shiner ("Shiner Suppl. Decl.") ¶ 4, ECF No. 112-1. Rather, "[m]any of the Agency's 'search tools' or databases are also configured to be used the same way that the Google search engine is used—the process is intuitive." *Id.*

The plaintiffs also argue that the supplemental search was inadequate because the plaintiffs "identified at least six offices which were clearly in the [Director's] Area at the time of

this request, yet do not appear to have been searched." Pls.' Mem. at 4. The CIA explained, however, that "all six of the offices identified by Plaintiffs were once sub-offices of Human Resources or the Chief Information Officer, Shiner Suppl. Decl. ¶ 3, and that searches of those offices' records "included a search for records pertaining to any search tools available to former sub-offices," *id.* Thus, the CIA has shown that its supplemental search "was reasonably calculated to uncover all relevant documents" for those former offices. *Ancient Coin Collectors Guild*, 641 F.3d at 514 (internal quotation marks omitted).

Finally, the plaintiffs point to a perceived inconsistency in the CIA's declarations to contend that the search was inadequate. The plaintiffs emphasize a Privacy Act Systems of Records Notice ("SORN"), which the CIA issued for a specific database that stated "[i]nformation may be retrieved from this system of records by automated or hand search based on *extant indices*," Pls.' Mem. at 5 (emphasis in original) (quoting 70 Fed. Reg. 42,418, 42,423 (July 22, 2005)), and they contrast this statement with statements of the CIA's declarants in this case that "none of the databases or search tools used by offices in the former Director's Area have 'indices,'" Shiner Decl. ¶ 15. The CIA noted, however, that "the language in the SORN relating to 'Retrievability' is written in the disjunctive and was not meant to be an exhaustive description of the various ways that records may be retrieved from CIA systems." Shiner Suppl. Decl. ¶ 5. That is, the SORN's reference to "extant indices" "is best understood to mean that searches are conducted using indices to the extent they are available." Defs.' Reply at 4. This reason provides adequate justification for any perceived discrepancy, and in any event, this discrepancy by itself would not render the CIA's supplemental search inadequate. Thus, the CIA has adequately explained "in reasonable detail the scope and method of the search conducted by

the agency," which "suffice[s] to demonstrate compliance with the obligations imposed by the

FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

### B.    The CIA's Withholdings under Exemptions 3 and 5 Were Appropriate

The plaintiffs contest the CIA's withholding, in full or in part, of eight responsive records

under FOIA Exemption 3 pursuant to the National Security Act (Docs. 630, 631, 632, 633, 634,

635, 636, and 638), one responsive record under Exemption 5 (Doc. 637), and three responsive

records under Exemption 7(E) (Docs. 635, 636, and 638). *See* Suppl. *Vaughn* Index at 1–4.[8] For

the reasons explained below, the CIA's withholdings under Exemptions 3 and 5 were appropriate

and, because the withholdings under Exemption 7(E) overlap with the withholdings under

Exemption 3, the plaintiffs' challenge to withholdings under Exemption 7(E) need not be

considered.[9]

### 1.    *Exemption 3*

FOIA Exemption 3 applies to matters "specifically exempted from disclosure by statute"

if that statute either (1) "requires that the matters [ ] be withheld from the public in such a

---

[8]       The plaintiffs do not contest the CIA's withholdings under Exemption 1 or 6. *See* Pls.' Mem. at 7.
Accordingly, summary judgment will be entered for CIA on that issue.
[9]       The three documents withheld under Exemption 7(E)—three "internal manual[s]" for investigative
databases used by the CIA's Office of Inspector General—were also withheld in full under Exemptions 3. Defs.'
Reply at 13–14 (alteration in original); *see also* Suppl. *Vaughn* Index at 3–4 (Docs. 635, 636, and 638). Since the
withholdings under Exemption 3 are upheld, the propriety of the agency's invocation of Exemption 7(E) need not be
addressed. *See Larson*, 565 F.3d at 862–63 ("[A]gencies may invoke the exemptions independently and courts may
uphold agency action under one exemption without considering the applicability of the other."); *Murphy*, 789 F.3d at
207 n.2. In any event, while not disputing that the three challenged documents were "compiled for law enforcement
purposes," 5 U.S.C. § 552(b)(7), the plaintiffs posit that "disclosure of details *about* the database, such as discussions of
how to conduct searches, could *not* reasonably be expected to risk such circumvention [of the law]." Pls.' Mem. at
12 (emphasis in original). The CIA persuasively notes, however, that descriptions of how to use the databases may
reveal information about "when, how, and to what extent the Office of Inspector General uses these databases in
the course of their investigations," Shiner Decl. ¶ 33, information that is generally protected from disclosure under
Exemption 7(E). *See, e.g., Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 50 (D.D.C. 2015) ("[I]nternal
database codes, fields, and other types of identifiers used by law enforcement agencies to conduct, organize, and
manage investigations and prosecutions qualify, at least, as law enforcement guidelines, if not also law enforcement
methods and techniques."); *Isiwele v. U.S. Dep't of Health & Human Servs.*, 85 F. Supp. 3d 337, 360 (D.D.C. 2015)
(upholding withholding under Exemption 7(E) of "information concerning the use of electronic database systems,
communications and instructions for Agency personnel related to possible interactions with applicants, and information
gathering techniques for preventing and investigating immigration fraud" (internal quotation marks omitted)).

manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i)–(ii). The D.C. Circuit has explained that "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)). Thus, the CIA "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865 (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990)).

Here, the plaintiffs challenge the CIA's invocation of Exemption 3 coverage pursuant to the National Security Act of 1947, 50 U.S.C. § 102A(i)(1), as amended, 50 U.S.C. § 3024(1). Pls.' Mem. at 7. The National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). As interpreted by the D.C. Circuit, this language exempts from disclosure under FOIA material that the agency "demonstrates . . . can reasonably be expected to lead to unauthorized disclosure" of intelligence methods or sources. *Wolf*, 473 F.3d at 377 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)); *see also Larson*, 565 F.3d at 863 (allowing for withholding of information that "could provide enough clues to allow some individuals to determine who provided the information to the CIA"). In light of the national-security interests implicated by such material, courts give "even greater deference to CIA assertions of harm to intelligence sources and methods under the National Security Act." *Wolf*, 473 F.3d at 377 (citing *CIA v. Sims*, 471 U.S. 159, 168–69 (1985)).

The CIA withheld five categories of information in eight documents pursuant to Exemption 3 and the National Security Act, which categories included "information that reveals the extent of the CIA's holdings on certain topics," "information regarding how to access the database," "specific examples of information contained in the database," "information that reveals the extent of the CIA's holdings on certain topics and classification control markings," and "investigative techniques and information regarding how the Office of Inspector General conducts its investigations." Suppl. *Vaughn* Index at 1–4 (Docs. 630, 631, 632, 633, 634, 635, 636, and 638); Defs.' Reply at 7.[10] The plaintiffs contend that the "CIA is again relying on the talismanic phrase 'intelligence sources and methods' without explaining it," Pls.' Mem. at 8, but the CIA's explanations are more than sufficient to justify these withholdings under Exemption 3 and the National Security Act. *See Morley*, 508 F.3d at 1126 (noting that Exemption 3 "depends less on the detailed factual contents of specific documents" than other exemptions). Indeed, courts in this circuit have previously found that similar descriptions satisfy Exemption 3. *See, e.g.*, *Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 175 (D.D.C. 2016) (finding Exemption 3 satisfied when the CIA withheld "classification markings," "routing information," and "dissemination control information"); *Am. Ass'n of Women, Inc. v. U.S. Dep't of Justice*, 167 F. Supp. 3d 136, 143 (D.D.C. 2016) (approving the withholding, under Exemption 3, of "information relating to intelligence sources and methods" without further description of the records).

The plaintiffs nevertheless argue that "[s]imply stating that something is an intelligence method does not meet the burden of evidence to prove that it is in fact an intelligence method," Pls.' Reply Supp. Renewed Cross-Mot. Summ. J. ("Pls.' Reply") at 7, ECF No. 115, but the CIA

---

[10] The plaintiffs do not appear to contest the CIA's withholding of classification control markings. *See* Pls.' Mem. at 7–10; Pls.' Reply Supp. Renewed Cross-Mot. Summ. J. ("Pls.' Reply") at 7, ECF No. 115. The plaintiffs also do not contest the withholdings in Document 631. *See* Pls.' Mem. at 8.

has offered more than conclusory statements. The CIA explained, both in its briefs and in its declarations, why the information withheld under Exemption 3 and the National Security Act amounts to intelligence methods and sources. For example, the CIA explained that information about the contents of the databases and examples from the databases are methods and sources because "[t]he databases are configured specifically for the CIA and are themselves intelligence methods, making information about how to access them subject to protection." Defs.' Mem. at 11; *see also* Shiner Decl. ¶ 23 ("[T]he databases serve as CIA intelligence methods in and of themselves and are configured specifically for the CIA."). Thus, "[d]isclosure of this information could expose Agency information systems to outside threats by providing step-by-step instructions on how to access CIA databases." Shiner Decl. ¶ 23. Similarly, classification markings are methods and sources because they help the CIA "control the dissemination of intelligence-related information and protect it from authorized disclosure" by indicating "the overall classification level, the presence of any compartmented information, and the limits on disseminating the information." *Id.* ¶ 24. These descriptions adequately explain why the withheld material falls within the scope of the National Security Act.

Moreover, the declarations and *Vaughn* indices submitted in support of the CIA's renewed motion adequately show that the withheld information "would reveal the Agency's intelligence interests and specific intelligence sources and methods that are contained within a particular database." *Id.* ¶ 22. The CIA described how the disclosure of this material would impact its sources and methods: disclosing screenshots of databases would "expose Agency information systems to outside threats by providing step-by-step instructions on how to access CIA databases," *id.* ¶ 23, while disclosing classification markings would "reveal details about the sensitivity and content of the underlying intelligence and indicate restrictions on access and

handling," *id.* ¶ 24. Disclosure of classification markings would also risk "reveal[ing] or highlight[ing] areas of particular intelligence interest, sensitive collection sources or methods, foreign sensitivities, and procedures for gathering, protecting, and processing intelligence." *Id.* ¶ 24. These explanations adequately show that disclosure of this information "would be reasonably harmful to intelligence sources and methods," *Wolf*, 473 F.3d at 378, and, given the "greater deference afforded the Agency under the National Security Act," *id.*, was properly withheld. Accordingly, summary judgment is granted to the defendants with respect to their withholdings pursuant to FOIA Exemption 3 and the National Security Act.

### 2. *Exemption 5*

In addition to challenging the CIA's withholdings under FOIA Exemption 3, the plaintiffs challenge the CIA's partial withholding, pursuant to the deliberative-process privilege and Exemption 5, of one document (Doc. 637). *See* Pls.' Mem. at 10.

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Two conditions must be met for a record to qualify for this exemption: (1) "its source must be a Government agency," and (2) "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 680 & n.4 (D.C. Cir. 2008). Exemption 5 may be used to withhold records subject to, *inter alia*, "the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege." *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S.*

*Attorneys*, 844 F.3d 246, 249 (D.C. Cir. 2016) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)).

The deliberative-process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Klamath Water*, 532 U.S. at 8). For the privilege to apply, the materials must be "both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). Thus, "[f]actual material that does not reveal the deliberative process is not protected by this exemption." *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983) (citing *EPA v. Mink*, 410 U.S. 73, 89–91 (1973)). While the D.C. Circuit has observed that the "term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citing *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)), "[t]he term 'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue," *id.* (citing *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)). Notably, the deliberative-process privilege "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Loving*, 550 F.3d at 38 (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)).

The plaintiffs challenge the CIA's withholding of one document, an "[i]nternal draft standard operating procedures with edits and comments from reviewers," Suppl. *Vaughn* Index at 3 (Doc. 637), arguing that this document "is not solely predecisional and deliberative."  Pls.' Mem. at 11.  The CIA's declarations explain that this document was "circulated within the Agency and therefore satisfies the intra-agency threshold of the exemption."  Shiner Decl. ¶ 27. Indeed, the document "includes comments, recommendations, and edits as well as discussions about wording, accuracy, and other deliberative ancillary matters" that "do not convey final Agency viewpoints on a particular matter, but rather reflect different considerations, opinions, options, and approaches that preceded an ultimate decision or are part of a policy-making process."  *Id.* ¶ 29.  The defendants explain that given the pre-decisional nature of this document, disclosure would "reveal the nature of the preliminary recommendations and opinions preceding the final determinations."  *Id.* ¶ 30.  In addition, given the comments and edits in the document, "[d]isclosure of this record would allow for the comparison between the wording in a final version and the draft, thereby revealing what information was considered significant or was discarded in the course of the drafting process."  *Id.*  These explanations provide sufficient justification for withholding under Exemption 5, given that the document evidently was "intended to facilitate or assist development of the agency's final position on the relevant issue," *Nat'l Sec. Archive*, 752 F.3d at 463.

The plaintiffs also contend that withholding of this document is improper because the "CIA has produced no final version of this document," Pls.' Mem. at 10, but an agency's failure to produce a specific document identified by the plaintiff does not render the search inadequate. *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 161 (D.D.C. 2018) ("[A] search is not automatically rendered inadequate by an agency's failure to locate a specific document."

(citing *Iturralde*, 315 F.3d at 315)).  Moreover, with respect to the absence of a final version, the

D.C. Circuit has noted that "[t]here may be no final agency document because a draft died on the

vine.  But the draft is still a draft and thus still pre-decisional and deliberative."  *Nat'l Sec.*

*Archive*, 752 F.3d at 463.  Indeed, "to require release of drafts that never result in final agency

action would discourage innovative and candid internal proposals by agency officials and

thereby contravene the purposes of the privilege."  *Id.*  Moreover, the CIA's declarations also

explain that, "to the extent there is any factual material" contained in the withheld document, "it

is part and parcel of the deliberations and cannot be segregated."  Shiner Decl. ¶ 30.  Disclosure

of these facts would "reveal the nature of the preliminary recommendations and opinions

preceding the final determinations," *id.*, and would "potentially compromis[e] classified or

privileged information or other information protected under the FOIA," *id.* ¶ 34.  Accordingly,

withholding this draft document was appropriate, and summary judgment is granted to the

defendants with respect to their withholdings pursuant to FOIA Exemption 5.

## IV.    CONCLUSION

For the reasons discussed above, the defendants' renewed motion for summary judgment

is granted and the plaintiffs' cross-motion for summary judgment is denied.  An appropriate

Order accompanies this Memorandum Opinion.

Date: August 20, 2018

_____
BERYL A. HOWELL
Chief Judge